179 N.J. Super. 535 (1981)
432 A.2d 960
BERNADETTE MACEY, ETC., ET AL., PLAINTIFFS-RESPONDENTS,
v.
ROLLINS ENVIRONMENTAL SERVICES (N.J.), INC., DEFENDANT-APPELLANT, AND MONARCH BOILER CONSTRUCTION CO., INC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1981.
Decided June 24, 1981.
*536 Before Judges MICHELS, KOLE and ARD.
Dennis v. Brenan, of the Pennsylvania bar, argued the cause for defendant-appellant Rollins Environmental Services (N.J.), Inc. (Archer, Greiner & Read, attorneys; Morgan, Lewis & Bockius, Thomas A. Masterson and Kell M. Damsgard, of the Pennsylvania bar, of counsel; Joseph H. Kenney, on the brief).
Brown, Connery, Kulp, Wille, Purnell & Greene, attorneys for plaintiffs-respondents Harry W. Corcoran, Jr. et al. (Dennis P. Blake of counsel and on the brief).
Tomar, Parks, Seliger, Simonoff & Adourian, attorneys for plaintiffs-respondents Bernadette Macey and Renee Sharer; Jones & Lutz, attorneys for plaintiff-respondent Lawrence Willoughby; Freeman, Zeller & Bryant, attorneys for plaintiff-respondent Mildred Penick, administratrix ad prosequendum for Denny Simons; Tuso, Gruccio, Pepper, Buonadonna, Giovinazzi & Butler, attorneys for defendant-respondent Combustion Engineering, Inc., and Parker, McCay & Criscuolo, attorneys for third-party defendant-respondent Aetna Life & Casualty Company, join in the brief submitted on behalf of plaintiff-respondent Harry W. Corcoran, Jr.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Pursuant to leave of this court, defendant Rollins Environmental Services (N.J.), Inc. (Rollins) appeals from an order of the Law Division compelling it to produce for inspection a statement prepared by its project engineer at the request of its general counsel. At issue is whether the statement concerning a fire and explosion at the Rollins plant is protected from disclosure by the attorney-client privilege or as a work product material prepared in anticipation of litigation.
On December 8, 1977 an explosion and fire occurred at Rollins' chemical waste disposal plant in Logan Township, New Jersey. Six persons were killed and many others sustained personal *537 injuries. All of the victims were employees of contracting firms working on an expansion program at the plant. The damage centered around the tank farm and incineration area and destroyed a substantial portion of the plant. As a result of the explosion the plant was quarantined for one week and access to the explosion site was severely restricted until April 1978. During the period of quarantine, access was limited to representatives of various federal and state regulatory agencies, including the Occupational Safety and Health Administration, the United States Environmental Protection Agency, the United States Alcohol, Tobacco and Firearms Agency, the United States Center for Disease Control, the New Jersey Department of Environmental Protection, as well as the New Jersey State Police and the Logan Township Police Department. Rollins also conducted an investigation under the direction of its general counsel, John Peet, and its claims director Lynn Moroz. Photographs of the explosion site and statements of the various witnesses and key personnel were taken, including a detailed statement from Rollins' project engineer Robert Slade.
In 1978 or 1979, the various plaintiffs instituted several actions against Rollins and other defendants, seeking to recover both compensatory and punitive damages based on theories of negligence and strict liability in tort. Extensive pretrial discovery, including interrogatories, depositions and inspection of documents, was undertaken by the parties. During the course of discovery proceedings it was ascertained that Slade had prepared a ten-page statement concerning the fire and explosion. Plaintiff Harry W. Corcoran, Jr.,[1] moved to compel the production of the statement, and subsequently other plaintiffs *538 joined in the motion. Rollins objected to its production on the grounds that it was protected from discovery by both the attorney-client privilege and the work-product doctrine. Following a hearing, the trial judge found that the statement constituted a professional communication between an attorney and his client. Nonetheless, the judge ordered its production for the reason that he felt that the public policy favoring full pretrial disclosure outweighed the benefits to be derived from enforcing the attorney-client privilege. The trial judge also held that the work-product doctrine only protected mental impressions, conclusions, opinions and legal theories and analysis, and that all factual statements in the statement were discoverable, and therefore directed the production of the statement for an in camera review so that Slade's impressions, conclusions, opinions or any of his views, legal theories or analysis could be excluded. We disagree and reverse.
The attorney-client privilege, which is the oldest of the privileges for confidential communications, is firmly embedded in our common law. In re Richardson, 31 N.J. 391, 396 (1960); State v. Toscano, 13 N.J. 418, 424 (1953); State v. Loponio, 85 N.J.L. 357, 360-361 (E. & A. 1913). While the privilege was not originally embodied in either constitutional or statutory provisions, in 1960 the Legislature incorporated the privilege in our Rules of Evidence. N.J.S.A. 2A:84A-1 et seq. (L. 1960, c. 52, art. 1 et seq.). Evid.R. 26 (N.J.S.A. 2A:84A-20), now provides:
(1) General rule. Subject to Rule 37 and except as otherwise provided by paragraph 2 of this rule communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness. The privilege shall be claimed by the lawyer unless otherwise instructed by the client or his representative; the privilege may be claimed by the client in person, or if incompetent or deceased, by his guardian or personal representative. Where a corporation or association is the client having the privilege and it has been *539 dissolved, the privilege may be claimed by its successors, assigns or trustees in dissolution.
(2) Exceptions. Such privilege shall not extend (a) to a communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud, or (b) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction, or (c) to a communication relevant to an issue of breach of duty by the lawyer to his client, or by the client to his lawyer. Where 2 or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others as to communications with respect to that matter.
(3) Definitions. As used in this rule (a) "client" means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity; and includes an incompetent whose guardian so consults the lawyer or the lawyer's representative in behalf of the incompetent, (b) "lawyer" means a person authorized, or reasonably believed by the client to be authorized to practice law in any State or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer. A communication made in the course of relationship between lawyer and client shall be presumed to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege.
"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation...." Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Its purpose is "to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The policy underlying this privilege is to promote full and free discussion between a client, an attorney, and the attorney's agents in order to prepare one's case. To further this policy it is essential that a client be able to protect his discussions with his attorney from disclosure to his adversary. The need for the privilege is pointed up in State v. Sugar, 84 N.J. 1 (1980), where Justice Pashman stated:
If the rule of law is this nation's secular faith, then the members of the Bar are its ministers. A lawyer is the mediator between his client's desires and the sovereign's commands. His aid is sought because of the relative ignorance of those to whom the law is but a collection of dim mysteries. When confronted with the awesome power of the criminal process, a client is never more in need of professional guidance and advocacy. In this setting, an instinct for survival compels a defendant to confide in an attorney. The necessity of full and open *540 disclosure by a defendant, see American Bar Ass'n., Code of Professional Responsibility, EC 4-1 at 21C (1976), imbues that disclosure with an intimacy equal to that of the confessional, and approaching even that of the marital bedroom. Cf. Griswold v. Connecticut, 381 U.S. 479, 484-486, 85 S.Ct. 1678, 1681-1682, 14 L.Ed.2d 510 (1965).
Any interference with the intimate relationship between attorney and client may do profound violence to the individual privacy of the client. Instead of receiving the protection that counsel can provide, the client unwittingly reveals his innermost thoughts to the unscrupulous. Such an invasion is unconscionable. The privacy between attorney and client is but an extension of the client's personal privacy. While generally there is no reasonable expectation that a party to a private conversation will not disclose to the government what he has learned, see Hoffa v. United States, 385 U.S. 293, 302-303, 87 S.Ct. 408, 413-414, 17 L.Ed.2d 374 (1966); see also United States v. White, 401 U.S. 745, 749, 91 S.Ct. 1122, 1124, 28 L.Ed.2d 453 (1971) (plurality opinion), the lawyer's duty to respect confidences is beyond dispute, see DR4-101, and receives zealous enforcement, see, e.g., State v. Bellucci, 81 N.J. 531, 543 (1980); State v. Land, 73 N.J. 24, 35 (1977). Even in the courtroom, where the search for truth is of singular importance, an evidentiary privilege surrounds those confidences. Only the client may waive that protection. See, e.g., In re Selser, 15 N.J. 393, 404 (1954); Evid.R. 26(b); see also Esposito v. United States, 436 F.2d 603, 606 (9th Cir.1970); Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir.1967); 8 J. Wigmore, Evidence § 2327 at 634-635 (McNaughton rev. 1961). The fundamental need for secrecy between attorney and client is clear. The intentional invasion of that privacy is just as clearly violative of basic notions of procedural justice. [at 12-13; footnote omitted]
Consequently, we hold that the trial judge erred when he ruled that Slade's statement concerning the fire and explosion of December 8, 1977, prepared at the behest of and for his employer's general counsel, was not protected from disclosure by the attorney-client privilege. The privilege unquestionably extends to corporations which must act through agents, including its officers and employees. The necessity for full and open disclosure between corporate employees and in-house counsel, such as Slade and Peet, demands that all confidential communications be exempt from discovery. The result we reach here is supported by the United States Supreme Court's recent decision in Upjohn Co. v. United States, ___ U.S. ___, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), wherein Justice Rehnquist, in pertinent part, stated:
The communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel. As the magistrate found, "Mr. Thomas consulted with the Chairman of the Board and outside counsel and thereafter conducted a *541 factual investigation to determine the nature and extent of the questionable payments and to be in a position to give legal advice to the company with respect to the payments." (Emphasis supplied.) Pet.App. 13a. Information, not available from upper-echelon management, was needed to supply a basis for legal advice concerning compliance with securities and tax laws, foreign laws, currency regulations, duties to shareholders, and potential litigation in each of these areas. The communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice. The questionnaire identified Thomas as "the company's General Counsel" and referred in its opening sentence to the possible illegality of payments such as the ones on which information was sought.... Pursuant to explicit instructions from the Chairman of the Board, the communications were considered "highly confidential" when made, App. 39a, 43a, and have been kept confidential by the company. Consistent with the underlying purposes of the attorney-client privilege, these communications must be protected against compelled disclosure. [___ U.S. at ___, 101 S.Ct. at 685, 66 L.Ed.2d at 594-595; footnotes omitted].
Since we are satisfied that Slade's ten-page statement was protected from disclosure by the attorney-client privilege, we need not consider whether it was protected from pretrial discovery as an attorney's work product prepared in anticipation of litigation. See R. 4:10-2; Jenkins v. Rainner, 69 N.J. 50, 54-58 (1976).
Reversed.
NOTES
[1] We were informed prior to oral argument that plaintiff-respondent Harry W. Corcoran, Jr., and others represented by Brown, Connery, Kulp, Wille, Purnell & Greene, settled their claims against defendant-appellant Rollins Environmental Services (N.J.), Inc., thereby rendering the issues raised on this appeal moot as to them. However, since the other plaintiffs-respondents have not settled their claims, there remains a justiciable issue for resolution by this court.