196 N.J. Super. 553 (1984)
483 A.2d 821
UNITED JERSEY BANK, PLAINTIFF-APPELLANT,
v.
MORTY WOLOSOFF, MANDELBAUM, SALSBURG, GOLD & LAZRIS, P.C. AND RICHARD M. SALSBURG, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1984.
Decided October 22, 1984.
*557 Before Judges MICHELS, PETRELLA and BAIME.
David R. Simon argued the cause for appellant (Simon & Allen, attorneys; David R. Simon of counsel; Lawrence A. Goldman and David R. Simon on the brief).
Martin Greenberg argued the cause for respondent Morty Wolosoff (Greenberg, Margolis, Ziegler & Schwartz, attorneys; Steven N. Dratch of counsel; Steven N. Dratch, Jeffrey D. Light and Charles Naselsky on the brief).
Theodore D. Moskowitz argued the cause for respondents Mandelbaum, Salsburg, Gold & Lazris, and Richard M. Salsburg; (McCarter & English, attorneys; Theodore D. Moskowitz on the brief).
The opinion of the court was delivered by, BAIME, J.A.D.
We granted plaintiff's application for leave to appeal from an interlocutory order of the Superior Court, Chancery Division, to address significant questions pertaining to the parameters of the attorney-client privilege within the corporate context. At issue is the extent to which confidential communications between corporate officers, in-house counsel and others are protected under the attorney-client privilege. Auxiliary questions are presented concerning the doctrine of waiver. Finally, additional issues pertain to the appropriate procedures to be employed in resolving questions relating to the applicability and scope of the privilege within the framework of the pretrial discovery process. We hold that the privilege can be invoked only with respect to those confidential communications between corporate counsel and others which fall strictly within the attorney's professional capacity. We also conclude that the attorney-client shield may be pierced when confidential communications *558 are made a material issue by virtue of the allegations in the pleadings and where such information cannot be secured from any less intrusive source. Lastly, we find that resolution of these issues by the trial judge through an in camera inspection of the materials sought to be barred from disclosure does not substantially dilute the attorney-client privilege.
The facts are not in dispute for the purpose of this appeal. Sometime in 1971, defendant Morty Wolosoff and a group of investors executed a mortgage note with plaintiff United Jersey Bank. Following a default on that obligation, plaintiff instituted suit resulting in a final judgment being entered on March 2, 1981 against defendant Wolosoff in the sum of $3,957,571. According to allegations set forth in plaintiff's complaint in the instant case and the accompanying certification, Wolosoff's attorney, defendant Richard Salsburg, met with Robert Mulligan, the bank's vice-president and in-house counsel, in an effort to resolve questions concerning the manner in which the judgment was to be satisfied. Defendant Salsburg allegedly represented that Wolosoff's only assets were those disclosed in certain income tax returns and a 25% interest in Cable Systems, Inc. (CSI). According to Salsburg, Wolosoff's stock in CSI was worthless because that company had accumulated liabilities totaling $9,500,000. Salsburg further represented that by virtue of Wolosoff's precarious financial condition the most he could pay on the judgment was $680,000. Negotiations between the parties continued over an extended period of time and ultimately resulted in a stipulation of settlement which was filed on May 20, 1981. Under the stipulation, the judgment was to be satisfied by the payment of $875,000 in four installments.
According to Mulligan's certification, in June 1983, he first learned that Wolosoff had substantial assets during the period when the settlement negotiations were taking place and the stipulation was effected. Contrary to the representations which had been made during the negotiation process, Mulligan learned that Wolosoff's investment in CSI was substantial and had a value in excess of $5,000,000. Mulligan also found that *559 during the settlement negotiations Wolosoff owned marketable securities and municipal bonds in the amount of $1,235,000 as well as 97 acres of real estate in Florida worth well over $1,000,000. According to Mulligan, Wolosoff's attorneys had grossly misrepresented his financial condition. Considering the value of the assets that had not been disclosed, Mulligan estimated that Wolosoff's net worth exceeded $9,000,000.
As a result of this information, plaintiff instituted suit against Wolosoff seeking rescission of the stipulation of settlement and damages. Plaintiff also sought injunctive relief requiring Wolosoff to satisfy the entire amount of the judgment against him from his share of the proceeds of a transaction involving CSI stock. The matter was then removed to the United States District Court where a preliminary injunction was entered enjoining Wolosoff from transferring his income or assets. The case was thereafter remanded to the Chancery Division upon the basis that the removal request had been improvidently granted. In the interim, plaintiff filed another complaint against Wolosoff, the law firm of Mandelbaum, Salsburg, Gold and Lazris, and Salsburg individually. In the second suit, plaintiff alleged that Salsburg and the law firm intentionally and fraudulently misrepresented Wolosoff's financial condition in order to obtain a reduction of the amount owed on the judgment. Plaintiff sought various forms of injunctive relief and compensatory and punitive damages. Both complaints were subsequently consolidated for trial.
The tortured history surrounding the pretrial discovery process in this case need not be recounted at length here. Suffice it to say, the desultory pace of disclosure resulted in numerous court hearings. On the final date set for the simultaneous production of voluminous documents, plaintiff's attorney belatedly advised Wolosoff of the bank's intention to assert the attorney-client privilege. In a letter, defendants were advised that the bank would waive the privilege with respect to all documents prepared during the period of the settlement negotiations. Plaintiff's attorney acknowledged that some or all of *560 those materials were pertinent to the issue of whether Mulligan and the bank reasonably relied upon the representation of Salsburg and Wolosoff. Since reasonable reliance constituted a critical element of its claim, plaintiff apparently adopted the position that full pretrial disclosure was legally mandated. Nevertheless, plaintiff's attorney sought to assert the privilege with respect to all other documents and materials. In response, defendants immediately applied for sanctions against the bank pursuant to R. 4:23-1 and 2. In its notice of motion, defendants sought an order directing the bank to produce all of the documents requested without reservation or the claim of privilege. The atmosphere surrounding the hearing on the return date of the motion can best be described as acrimonious. Obviously exasperated by what he perceived to be the dilatory tactics of counsel, the trial judge nevertheless denied the application for sanctions. However, he "interpreted" his prior orders as compelling full pretrial disclosure. More specifically, the court held that as a matter of law all confidential communications were to be disclosed because they might bear upon the question of reasonable reliance. In our view, the trial judge's order was far too broad. We reverse.

I
Certain prefatory comments are in order. Resolution of the issues presented here requires a reconciliation of competing social values. The attorney-client privilege advances secrecy. It thus "runs counter to the fundamental theory of our judicial system that the fullest disclosure of the facts will best lead to the truth." In re Selser, 15 N.J. 393, 405 (1954). The underlying theories are patently antithetical. In seeking to accommodate these competing policies, we recognize that they are not static. "The social policy that will prevail in many situations" will run afoul in others of more important societal concerns, competing for supremacy. Clark v. United States, 289 U.S. 1, 13, 53 S.Ct. 465, 469, 77 L.Ed. 993, 999 (1933). "It is then the *561 function of a court to mediate between them, assigning, so far as possible, a proper value to each." Ibid.
The attorney-client privilege is deeply embedded in our jurisprudence and formed a part of the common law of England prior to the birth of this country. Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 684, 66 L.Ed.2d 584, 591 (1981). J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). "While the privilege was not originally embodied in either constitutional or statutory provisions," our Legislature ultimately codified it in N.J.S.A. 2A:84A-20. Macey v. Rollins Env. Serv., 179 N.J. Super. 535, 538 (App.Div. 1981). It presently appears in our Rules of Evidence. See Evid.R. 26. The privilege recognizes that sound legal advice or advocacy serves public ends and rests on the need to "encourage full and frank communication between attorneys and their clients." Upjohn Co. v. United States, supra, 449 U.S. at 389, 101 S.Ct. at 677, 66 L.Ed.2d at 591. See also Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 917, 63 L.Ed.2d 186, 195 (1980); Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39, 51 (1976). "Preserving the sanctity of confidentiality of a client's disclosures to his attorney [promotes] an open atmosphere of trust." Reardon v. Marlayne, 83 N.J. 460, 470 (1980). Where the privilege is applicable, "it must be given as broad a scope as its rationale requires." Ervesun v. Bank of N.Y., 99 N.J. Super. 162, 168 (App.Div. 1968), certif.den. 51 N.J. 394 (1968).
Nevertheless, the privilege must be anchored to its essential purpose. Our courts have thus recognized that the privilege results in suppression of evidence and to that extent is at war with the truth. In re Selser, supra 15 N.J. at 405-406; Longo v. American Policyholders' Ins. Co., 181 N.J. Super. 87, 89 (Law Div. 1981). In another context, our Supreme Court observed that "[t]ruth and justice are inseparable" and that a false judgment is likely to ensue when relevant evidence is suppressed. State v. Bisaccia, 58 N.J. 586, 589 (1971). We *562 have also recognized that justice is best served by affording litigants every reasonable avenue of inquiry before trial. Myers v. St. Francis Hospital, 91 N.J. Super. 377, 385 (App. Div. 1966); Caparella v. Bennett, 85 N.J. Super. 567, 571 (App. Div. 1964). Toward that end, we have emphatically discouraged gamesmanship and have liberally construed our discovery rules. Saia v. Bellizio, 103 N.J. Super. 465 (App.Div. 1968), aff'd 53 N.J. 24 (1968). Impediments to pretrial disclosure "debase the judicial system by promoting surprise." Longo v. American Policyholders' Ins. Co., supra 181 N.J. Super. at 90. To justify so serious an insult to the search for the truth, "some compensating gain should be apparent." Ibid. It is against this backdrop that the difficult issues presented here must be considered.

II
We note initially that the "privilege unquestionably extends to corporations which must act through agents, including their officers and employees." Macey v. Rollins Env. Serv., supra 179 N.J. Super. at 540. See also Upjohn Co. v. United States, supra. As we observed in Macey v. Rollins Env. Serv., supra at 540, "[t]he necessity for full and open disclosure between corporate employees and in-house counsel ... demands that all confidential communications be exempt from discovery." Nevertheless, that principle merely begins the inquiry, but does not end it. We have repeatedly recognized that the privilege is "limited to communications made to the attorney in his professional capacity." Metalsalts Corp. v. Weiss, 76 N.J. Super. 291, 297 (Ch.Div. 1962). See also L.J. v. J.B., 150 N.J. Super. 373, 377 (App.Div. 1977); Hansen v. Janitschek, 57 N.J. Super. 418, 433 (App.Div. 1959), rev'd on dissenting opinion 31 N.J. 545 (1960); Palatini v. Sarian, 15 N.J. Super. 34, 42 (App.Div. 1951). Stated somewhat differently, the privilege accords the shield of secrecy only with respect to confidential communications made within the context of the strict relation of attorney and client.
*563 Applying these principles to the facts of this case, we cannot determine whether communications between Mulligan and others properly fall within the purview of the privilege. The mere fact that Mulligan is an attorney and served as the bank's in-house counsel is clearly insufficient. So too, that Mulligan's employment duties may have included responsibilities pertaining to pending litigation is not enough, by itself, to compel application of the privilege. Rather, judicial scrutiny must focus upon both the nature of the relationship between Mulligan and others and the type of information or communication involved. If Mulligan's communications were made within his professional capacity as a lawyer, they are entitled to be kept secret. Obviously, such a determination cannot be made in a vacuum. Instead, the documents must be carefully reviewed to determine their nature and content. We are satisfied that this can be accomplished only by an in camera inspection of the documents by the trial judge. Cf. Newark Bd. of Ed. v. Newark Teachers Union, 152 N.J. Super. 51, 62 n. 3 and 4 (App.Div. 1977). We recognize that even this limited preliminary disclosure to some extent dilutes the effectiveness of the privilege. Cf. State v. Boiardo, 82 N.J. 446, 467 (1980). Nonetheless, the intrusion is minor within the context of the competing values involved. We believe that such a procedure comports with common notions of fundamental fairness and best alleviates the tension between the conflicting policies at issue.

III
We next turn to the issue of waiver. Assuming that all or some of the documents fall within the purview of the attorney-client privilege, it must then be determined whether overriding public policy concerns nevertheless compel disclosure. The "necessary foundations to the valid piercing of [the] privilege" were described by our Supreme Court in In re Kozlov, 79 N.J. 232 (1979). There, the Court adopted a tripartite test in determining whether the privilege must yield to other important societal concerns. First, "[t]here must be a *564 legitimate need ... to reach the evidence sought to be shielded." Id. at 243. Second, "[t]here must be a showing of relevance and materiality of that evidence to the issue before the court." Id. at 243-244. Lastly, the party seeking to bar assertion of the privilege must show "by a fair preponderance of the evidence including all reasonable inferences that the information [cannot] be secured from any less intrusive source." Id. at 244.
The Chancery Division apparently found that all three requisites had been established. The essential predicate to the court's conclusion appears to be the nature of the claim asserted by the bank. Fraud consists of "a material representation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely thereon, and he does so rely to his damage."[1]Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254, 257 (App.Div. 1973), aff'd 64 N.J. 197 (1974). Reasonable reliance thus constitutes a critical element of plaintiff's cause of action. See DSK Enterprises, Inc. v. United Jersey Bank, 189 N.J. Super. 242, 250-251 (App. Div. 1983); Prosser, Law of Torts § 108 (4 ed. 1971). The nature and extent of the reliance required is subject to debate. For example, it has been held that "if a party to whom representations are made nevertheless chooses to investigate the relevant state of facts for himself, he will be deemed to have relied on his own investigation." DSK Enterprises, Inc. v. United Jersey Bank, supra at 251. See also John Hancock & Co. v. Cronin, 139 N.J. Eq. 392, 397, 398 (E & A 1947); Froehlich v. Walden, 66 N.J. Super. 390, 395 (Ch.Div. 1961). On the other hand, our Supreme Court recently observed that "[o]ne who engages in fraud ... may not urge that [his] victim should have been more circumspect or astute." Jewish Center *565 of Sussex Cty. v. Whale, 86 N.J. 619, 626, n. 1 (1981). See also Nappe v. Anschelwitz, Barr, Ansell & Bonello, 97 N.J. 37 (1984). In any event, plaintiff's knowledge of Wolosoff's financial condition at the time of the stipulation of settlement may well reveal the extent to which it relied upon the alleged misrepresentations. Since it is undisputed that Mulligan played a key role in negotiating the settlement, communications between him and others may be extremely probative. Clearly, defendants have a "legitimate need" for disclosure of such information, the communications are both "relevant and material," and the evidence cannot be secured from any "less intrusive source." In re Koslov, supra at 79 N.J. 243-244. Thus, defendants plainly satisfied the tripartite formula established in In re Koslov, supra, and to that extent the attorney-client privilege must yield.
Our research does not disclose any published decision in New Jersey dealing with this precise issue. Nonetheless, analogies abound. In a somewhat related context, our courts have held that the privilege is waived when the client "calls his attorney to the stand." See Aysseh v. Lawn, 186 N.J. Super. 218, 225 (Ch.Div. 1982), quoting from Drayton v. Industrial Life, 205 S.C. 98, 31 S.E.2d 148, 153-154 (Sup.Ct. 1944). See also State v. Kociolek, 23 N.J. 400, 416-417 (1957). So too, assertion of fair comment and good faith by a newspaper in a libel action was said to constitute a qualified waiver of the privilege barring disclosure of the source of information.[2]See Brogan v. Passaic Daily News, 22 N.J. 139, 151-152 (1956); Beecroft v. Point Pleasant Print. & Pub. Co., 82 N.J. Super. 269, 278-279 (Law Div. 1964). The confidentiality accorded a juvenile's records has been breached to the extent necessary to insure the right of cross-examination. State v. Parnes, 134 N.J. Super. 61, 63 (App.Div. 1975); State in Interest of A.S., 130 N.J. Super. 388, 392-393 (Cty.Ct. 1974). Criminal records which were expunged *566 at the plaintiff's request were ordered to be made available to the defendant in a malicious prosecution action. Ulinksy v. Avignone, 148 N.J. Super. 250, 257-258 (App.Div. 1977). And most recently, we held that "information concerning a patient's medical condition could be disclosed to someone having a legitimate interest in the subject where the physical condition of the patient is made an element of the claim." Lazorick v. Brown, 195 N.J. Super. 444 (1984). See also Hague v. Williams, 37 N.J. 328, 336 (1962).
In a similar vein, the federal courts have held that various types of evidentiary privileges are waived when the information sought is highly germane to a critical issue raised by the party seeking to invoke it. For example, the attorney-client privilege was deemed waived in a prosecution for income tax evasion where the accused claimed that his returns were amended on the advice of counsel. See United States v. Mierzwicki, 500 F. Supp. 1331, 1335 (D.M.D. 1980). Similarly, the attorney-client privilege was denied in a civil rights suit brought against state officials where the defendant asserted the affirmative defense of good faith immunity. Hearn v. Rhay, 68 F.R.D. 574, 580 (E.D.Wash. 1975). Further, the privilege was deemed waived in a patent infringement suit where the parties put the validity of the patents directly in issue. Honeywell v. Piper Aircraft Corp., 50 F.R.D. 117, 120 (M.D.Pa. 1970). The privilege barring disclosure of official information was denied in proceedings instituted by the government to which the privileged matter was relevant. United States v. Cotton Valley Operators Committee, 9 F.R.D. 719, 721 (W.D.La. 1949), aff'd 339 U.S. 940, 70 S.Ct. 793, 94 L.Ed. 1356 (1950); United States ex rel. Schlueter v. Watkins, 67 F. Supp. 556, 561 (S.D.N.Y. 1946), aff'd 158 F.2d 853 (2 Cir.1946). And, of course, the executive privilege asserted by the President was overruled in United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 3018, 41 L.Ed.2d 1039, 1064 (1974).
*567 We believe that these principles apply with equal force here. We note the inherent inequity in permitting plaintiff to use the privilege as a sword rather than a shield. If permitted to do so, plaintiff could divulge whatever information is favorable to its position and assert the privilege to preclude disclosure of the detrimental facts. The resulting half-truth that would be revealed might well be more disabling than a total distortion. We are persuaded that "when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege." United States v. Mierzwicki, supra at 1335. In point of fact, plaintiff acknowledged as much when it agreed to release all documents, including those otherwise protected by the attorney-client privilege, with respect to the time period during which the settlement was negotiated.[3] However, we are persuaded that this offer was far too restrictive. Conceivably, there may be communications between Mulligan and others that pertain to defendant's financial condition which were made prior to the entry of the judgment on March 2, 1981. To the extent that such documents are pertinent to the issue of reasonable reliance, we believe that they should be disclosed.
Nonetheless, we are convinced that the order of the Chancery Division goes well beyond that which is reasonably necessary to insure fairness to the parties. We are satisfied that the competing *568 demands of secrecy and disclosure can best be accommodated by compelling the release of only those documents which bear upon the extent to which plaintiff reasonably relied upon the representations allegedly made during the negotiation process. Obviously, this question cannot be fairly resolved without a painstaking review and inspection of the communications sought to be barred. We note in that regard that plaintiff cannot invoke the privilege to render conclusive its own evaluation of the nature and character of the materials in question. Rather, an in camera inspection by the court is clearly required.
Accordingly, the Chancery Division's order is reversed. The appropriate documents and materials are to be submitted to the Chancery Division for its in camera review. The court is to determine whether the attorney-client privilege is applicable and, if so, whether it is waived because the communication or communications bear upon the question of reasonable reliance. We do not retain jurisdiction.
NOTES
[1] In equitable fraud, the second element (knowledge) is not necessary. Foont-Freedenfeld v. Electro-Protective, supra at 257. Here, plaintiff seeks rescission and monetary damages. Thus, all five elements must be established. Ibid.
[2] The statute has since been amended altering the law in that regard. See Maressa v. New Jersey Monthly, 89 N.J. 176, 194 (1982).
[3] We note that plaintiff's disclosure of communications which were made during this period of time does not constitute an absolute waiver. It has been stated that "a disclosure of a part of a protected communication results in a total waiver of the attorney-client privilege." Sicpa No. America v. Donaldson Enterprises, Inc., 179 N.J. Super. 56, 61 (Law Div. 1981). See also Evid.R. 37. Here, as all parties acknowledge, our law compelled disclosure of communications otherwise protected by the attorney-client privilege to the extent that they were pertinent to the question of reasonable reliance. Therefore, disclosure was mandated by virtue of the necessity of piercing the privilege under In re Koslov, supra. This limited disclosure, however, extends no further than that particular subject matter. Wholly irrelevant communications before and after settlement negotiations having no possible bearing on this question remain protected by the attorney-client privilege.