580 A.2d 1093

EUGENE WAGI AND VALERIA WAGI, HIS WIFE, PLAINTIFF, v. SILVER RIDGE PARK WEST, DEFENDANTS/THIRD PARTY PLAINTIFF, v. R.F. DOSS, INC.; SCHOOR, DE PALMA, AND GILLEN; PAUL HULSE; AND TOWNSHIP OF BERKELEY, THIRD PARTY DEFENDANTS.

GRACE ECKERT AND HOWARD ECKERT, HER HUSBAND, PLAINTIFF, v. SILVER RIDGE PARK WEST HOMEOWNERS ASSOCIATION, DEFENDANT/THIRD PARTY PLAINTIFF, v. R.F. DOSS, INC.; SCHOOR, DE PALMA, AND GILLEN; PAUL HULSE; AND TOWNSHIP OF BERKELEY, THIRD PARTY DEFENDANTS.

MARGARET L. SAULINO AND JOSEPH R. SAULINO, HER HUSBAND, PLAINTIFF, v. SILVER RIDGE PARK WEST HOMEOWNERS ASSOCIATION, DEFENDANT/THIRD PARTY PLAINTIFF, v. R.F. DOSS, INC.; SCHOOR, DE PALMA AND GILLEN; PAUL HULSE; AND TOWNSHIP OF BERKELEY, THIRD PARTY DEFENDANTS.

CLAIRE G. MAGUIRE, PLAINTIFF, v. GENERAL MOTORS CORPORATION, A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF N.J., CHEVROLET MOTOR DIVISION, A BUSINESS ENTITY AUTHORIZED TO DO BUSINESS IN THE STATE OF N.J., TOWNE AND COUNTRY CHEVROLET, A BUSINESS ENTITY AUTHORIZED TO DO BUSINESS IN THE

STATE OF N.J., A.B.C. MANUFACTURING (THIS NAME BEING FICTITIOUS, THE ACTUAL NAME IS UNKNOWN AT THE PRESENT TIME), X.Y.Z. DISTRIBUTING (THIS NAME BEING FICTITIOUS, THE ACTUAL NAME IS UNKNOWN AT THE PRESENT TIME), JOHN DOE ENGINEER (THIS NAME BEING FICTITIOUS, THE ACTUAL NAME IS UNKNOWN AT THE PRESENT TIME), AND MONROE H. EICHNER, DEFENDANTS.

PEARL A. AUSTIN AND JOSEPH W. AUSTIN, HER HUSBAND, PLAINTIFFS, v. SHOP RITE OF MANAHAWKIN, DEFENDANT.

Superior Court of New Jersey
Law Division

August 18, 1989.

*William V. Kelly* for plaintiff Wagi (*Starkey, Kelly, Blaney & White,* attorneys).

*Bernard F. Boglioli,* for defendants Silver Ridge.

*Gerald Hanson* for defendant Schoor, DePalma & Gillen (*Brenner, Wallack & Hill,* attorneys).

*Arthur Shanker* for defendant Township of Berkeley (*Ostranger, Fieldman, Zucker, Kachmar & Nirenberg,* attorneys).

*Kevin Riordan* for defendant R.F. Doss (*Horn, Kaplan, Goldberg, Gorny & Daniels,* attorneys).

*Robert Rosenberg* for plaintiff Maguire.

*Joseph Zavesky* for defendant Towne and Country Chevrolet.

*Stephen Foley* for defendant Eichner (*Campbell, Foley, Lee, Murphy & Cernigliaro,* attorneys).

*Thomas Tansey* for defendant General Motors Corporation (*Morley, Cramer, Tansey, Haggerty & Fanning,* attorneys).

*Milton Josephson* for plaintiffs Austin.

*David Lustbader* for defendant Shop Rite (*Lustbader & Lustbader,* attorneys).

CLYNE, P.J.Cv.

The above cases, although unrelated, have common discovery issues. Each presents its own procedural context and all arrive at this juncture at varying states of factual development. The cases involve the court in a decade-old conflict over the meaning of the term "work product," its interrelationship with the "lawyer-client privilege," and the showing required to overcome *R.* 4:10–2(c), once a party invokes its protections. Resolution of this conflict requires the court to address the following issues:

I. whether the names and addresses of those who have given witness statements must be revealed;

II. whether witness statements in the possession of a party should be turned over to an adversary given:

(A) the potential relevance of the lawyer-client privilege; or

(B) the clear applicability of the work-product concept contained within *R.* 4:10–2(c).

A review of the available authorities reveals that except in rare circumstances an attorney must reveal the names and addresses of witnesses who have given statements. On the other hand, statements of witnesses are, as a general matter, protected from revelation unless and until the party seeking those statements makes a showing sufficient to overcome the policies supporting those protections.

In *Maguire v. General Motors Corporation,* docket No. L–060952–86, plaintiff brought suit for personal injuries resulting from an accident, allegedly caused by defective brakes. Defendant hired a private investigator who took statements from three witnesses: an eyewitness, a convenience store man-

ager who often spoke to plaintiff on her way to and from work, and the owner of the auto body shop which towed and stored plaintiff's vehicle after the accident. All the statements were taken more than three years after the accident. At some point, plaintiff's counsel learned of the existence of these statements. The present motion for their production followed shortly thereafter.

*Wagi v. Silver Ridge Park West*, docket No. L–045557–87, is a consolidated action wherein three plaintiffs allege three separate falls on a stretch of sidewalk located in Berkeley Township, a named defendant. The township has taken the position that even if it was its responsibility to maintain the sidewalk, it still had no constructive or actual notice of a hazardous condition thereon, and thus, plaintiff cannot establish liability under the provisions of the New Jersey Tort Claims Act. *N.J.S.A.* 59:4–2, –3.

In pursuit of this argument, defendant Berkeley Township, by way of third-party complaint, brought suit against an engineering firm which formerly served as the township engineer. The township maintains that the engineering firm should have discovered the dangerous condition, and may be liable for some or all of what Berkeley must pay in the event of an adverse judgment. The engineering firm responds that it did discover the condition and reported same to the township prior to the date of the accidents.

The township, in certified answers to interrogatories, has admitted that it has a statement signed by a township executive which concerns the subject matter of the sidewalk in question. The engineering firm, joined by other parties, seeks to compel production of same.

In *Austin v. Shop Rite of Manahawkin*, docket No. L–69267–88, plaintiff alleges she suffered personal injuries after she slipped and fell on defendant's premises as a result of water seepage from an iced-melon display. Despite a request contained within interrogatories, defendant has refused to give

plaintiff the names and addresses of witnesses, copies of witness statements or dates that statements were taken, whether given to defendant itself or representatives of defendant's insurance carrier.

Plaintiff now moves for more specific answers to these and other interrogatories. Defendant cross moves for a variety of relief, including a protective order from what it views as oppressive and unduly burdensome discovery requests.

## I.

The initial question is whether the names and addresses of witnesses must be revealed. One can argue that the lawyer-client privilege, or the concept of work product, protects such information from release. However, if a party did not have to reveal at least the names and the addresses of witnesses, then the question of the applicability of the lawyer-client privilege or the work product concept to those witnesses' statements would be meaningless. Cf. *Reisch v. J & L Holding Company,* 443 *N.Y.S.*2d 638, 111 *Misc.*2d 72 (N.Y.Sup.Ct.1981) (names and addresses of witnesses not work product). The condoning of a refusal to reveal the basic information concerning the existence of witnesses relegates the parties to the game of "hide and seek," so consistently condemned by our Supreme Court. *Lang v. Morgan's Home Equipment Corporation,* 6 *N.J.* 333, 338, 78 *A.*2d 705 (1951); *Jenkins v. Rainner,* 69 *N.J.* 50, 57, 350 *A.*2d 473 (1976). Of course, in very limited situations, the names and addresses of a party may implicate the lawyer-client privilege to an extent which outweighs an adverse party's need to acquire them. *Fellerman v. Bradley,* 99 *N.J.* 493, 493 *A.*2d 1239 (1985). Yet such an exigency—at least in the context of a request for the names and addresses of witnesses who gave statements—ought to occur only rarely. It is axiomatic that until a party reveals such information, there is no possible way to test an attorney's bald assertion that his client spoke the words in question or that the conversation took place in the

context of the lawyer-client relationship. Moreover, the statement itself, the real focus of a client's confidences, remains undiscoverable providing that his lawyer describes the applicability of the privilege correctly. Given a judicial policy which favors maximum discovery, this court sees no reason to leave such a decision in the hands of the party opposing disclosure. As the court said in *Fellerman,* the lawyer-client privilege is "to be applied in a manner that will be consistent with the necessities of judicial policy and with the essential purpose the privilege is designed to serve." *Id.* at 501, 493 *A.*2d 1239.

## II.

### A.

Whether a party must turn over to an adversary a witness's statement requires an analysis of whether the lawyer-client privilege or the concept of work product protects the statement.

In *Macey v. Rollins Environmental Services,* 179 *N.J.Super.* 535, 432 *A.*2d 960 (App.Div.1981), numerous individuals were injured after an explosion and fire occurred at defendant's chemical waste disposal plant. Defendant, at the direction of its corporate counsel, began an investigation by taking witnesses' statements, including the statement of the project engineer. A motion was filed to compel production of the project engineer's statement.

The trial court ordered the statement produced. The Appellate Division reversed. Never reaching the question of whether the work-product concept under *R.* 4:10–2(c) applied, the Appellate Division instead focused on the lawyer-client privilege contained within *Evid.R.* 26; *N.J.S.A.* 2A:84A–20:

RULE 26. LAWYER–CLIENT PRIVILEGE

(1) General Rule. Subject to Rule 37 and except as otherwise provided by paragraph 2 of this rule communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in

the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness. The privilege shall be claimed by the lawyer unless otherwise instructed by the client or his representative; the privilege may be claimed by the client in person, or if incompetent or deceased, by his guardian or personal representative. Where a corporation or association is the client having the privilege and it has been dissolved, the privilege may be claimed by its successors, assigns or trustees in dissolution.

. . . .

(3) Definitions. As used in this rule (a) "client" means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity; and includes an incompetent whose guardian so consults the lawyer or the lawyer's representative in behalf of the incompetent, (b) "lawyer" means a person authorized, or reasonably believed by the client to be authorized to practice law in any state or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer. A communication made in the course of relationship between lawyer and client shall be presumed to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege.

In the Appellate Division's view, the privilege applied. If not actually taken by the defendant's corporate counsel, the statement was taken at his behest. Moreover, the court noted:

The privilege unquestionably extends to corporations which must act through agents, including its officers and employees. The necessity for full and open disclosure between corporate employees and in-house counsel ... demands that all confidential communications be exempt from discovery. [179 *N.J.Super.* at 540, 432 *A.*2d 960].

The court concluded by noting that its opinion fully comported with the United States Supreme Court's then recent opinion in *Upjohn v. United States,* 449 *U.S.* 383, 101 *S.Ct.* 677, 66 *L.Ed.*2d 584 (1981).

■ Thus, as *Macey* demonstrates, the lawyer-client privilege protects statements of a party's employees taken at the direction of the party's attorney. This court realizes the inherent difficulties with this position. Henceforth, the possibility exists that some litigants will simply insure that statements of em-

ployees are taken at the direction of an attorney. This is perhaps an unfortunate consequence, but not one which would allow this court to ignore the rule or the reported decisions of higher courts. In point of fact, the lawyer-client privilege expresses important policy determinations for which there are costs. The reality, that our adversarial system of justice carries its own imperatives which do not always comport with the notion of unfettered access to the truth, tempers the ideal of full disclosure. Clients must be able to speak frankly to their attorneys. Recognition of this fact necessarily implies a zone of confidentiality impenetrable by the otherwise legitimate discovery goals of an adverse party. *Cf Reardon v. Marlayne,* 83 *N.J.* 460, 470, 416 *A.*2d 852 (1980).

Of course, limits exist. Thus, it is often said that, to the extent that the privilege results in the suppression of evidence, it is "at war with the truth" and must be strictly "anchored to its essential purpose." *United Jersey Bank v. Wolosoff,* 196 *N.J.Super.* 553, 561, 483 *A.*2d 821 (App.Div.1984). Yet where applicable, the privilege is to be "... given as broad a scope as its rationale requires." *Ervesun v. Bank of New York,* 99 *N.J.Super.* 162, 168, 239 *A.*2d 10 (App.Div.1968). *Macey* tells us that its rationale reaches and subsumes the written statements of employees taken by or at the direction of a corporation's attorney. In a similar vein, the Appellate Division in *State v. Pavin,* 202 *N.J.Super.* 255, 494 *A.*2d 834 (App.Div. 1985) held that a statement of an insured to an adjuster would be privileged if "communications were in fact made to the adjuster for the dominant purpose of the defense of the insured by the attorney and where confidentiality was the reasonable expectation of the insured." *Id.* at 262, 494 *A.*2d 834.

*Macey* also alludes to the difficult showing required for the discovery of privileged materials. "The necessity for full and open disclosure ... demands that all confidential communications be exempt from discovery." 179 *N.J.Super.* at 540, 432 *A.*2d 960. However, *Evid.R.* 26(2) codifies three judicially

recognized exceptions to the general rule favoring non-disclosure:

> Such privilege shall not extend (a) to a communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud, or (b) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction, or (c) to a communication relevant to an issue of breach of duty by the lawyer to his client, or by the client to his lawyer.

Those limited exceptions attempt to restrict the lawyer-client privilege "to the purposes for which it exists." *Fellerman v. Bradley, supra,* 99 *N.J.* at 502, 493 *A.*2d 1239; *see also In re Kozlov,* 79 *N.J.* 232, 398 *A.*2d 882 (1979).

### B.

When individuals, who are not agents or employees of a party, give statements to that party's attorney, disclosure of these statements depends not upon the lawyer-client privilege, but upon the work product concept.

An issue which is not the subject of these instant matters is whether statements by witnesses constitute records kept in the normal course of business. In *Nordeide v. Pennsylvania R.R. Co.,* 73 *N.J.Super.* 74, 179 *A.*2d 71 (1962), the court held that reports and statements obtained by defendant railroad company were not made "in anticipation of litigation" but were part of a regular practice of investigating all accidents. Therefore, they were discoverable as reports obtained in the regular course of business activity.

The seminal case of *Hickman v. Taylor,* 329 *U.S.* 495, 67 *S.Ct.* 385, 91 *L.Ed.* 451 (1947), established the general rule that witness statements taken in the context of litigation are work product. *Fed.R.* 26(b)(3) subsequently codified the holding. *Heidebrink v. Moriwaki,* 104 *Wash.*2d 392, 706 *P.*2d 212 (Sup. Ct.1985). Our own *R.* 4:10–2(c) was based on the federal rule. *Branca v. Shore Memorial Hospital,* 182 *N.J.Super.* 315, 440 *A.*2d 1165 (Law Div.1981); *Pressler, Current N.J. Court Rules,* Comment *R.* 4:10–2 (1989). The rule states:

Subject to the provisions of R. 4:10–2(d), a party may obtain discovery of documents and tangible things otherwise discoverable under R. 4:10–2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Two published opinions in New Jersey have applied the *Hickman* analysis to witness statements. Both are Law Division cases decided by the same judge. In *Werkheiser V.T.E. Warren, Inc.*, 142 *N.J.Super.* 405, 361 *A.*2d 603 (Law Div.1976), plaintiff sued a corporate defendant for injuries suffered after an undisclosed accident occurred on defendant's property. Three years later, defendant took statements of fact from witnesses who were apparently employed by defendant. The issue before the court in response to plaintiff's motion was whether the work product concept protected the statements from discovery.

The court had little difficulty in arriving at the conclusion that defendant must release the statements. Noting that there appeared to be no doubt that the statements were taken in preparation for litigation, the court focused its attention primarily on the second phase of the rule: once *R.* 4:10–2(c) is found to apply, when are its protections nevertheless overcome? In answer, the court articulated a "good cause" standard: "What must be shown under the requirements of 'good cause', *R.* 4:10–2(c), are such circumstances as to give the court reason to expect that the benefits of pretrial discovery will be achieved." 142 *N.J.Super.* at 407, 361 *A.*2d 603. Given the rather obvious inequality between the parties respecting the gathering of accurate statements, the court concluded, the beneficial objectives could only be achieved by plaintiff if defendant revealed all employee statements. The court granted plaintiff's motion.

*Werkheiser,* was followed in *Branca v. Shore Memorial Hospital, supra.* There the same court considered whether the "rule of *Werkheiser*" applied to the statement of a security guard employed by a firm retained by defendant hospital. Reiterating the logic of *Werkheiser,* the court noted the presence of the same type of closeness between witness and defendant which had warranted disclosure in the earlier instance.

The court in *Werkheiser* and *Branca* utilized a "good cause" test as a basis for its holdings. See *Heidebrink v. Moriwaki, supra,* 104 *Wash.*2d at 395–396, 706 *P.*2d 212 (noting that prior to 1970, discovery of work product in the federal system was governed by "good cause" requirement of *Fed.R.Civ.P.* 34). However, *R.* 4:10–2(c) does not make reference to "good cause" as a basis for revelation of witnesses' statements. Moreover, the *Werkheiser* court's description of "good cause" as "such circumstances as to give the court reason to expect that the benefits of pretrial discovery will be achieved" offers insufficient guidance. *R.* 4:10–2(c) is very clear. In order to obtain the work product of an adverse party, the movant must establish: (a) that he has substantial need of it; and (b) that he is unable, without undue hardship, to obtain substantially the same thing from another source. The court next directs its attention to this standard.

In *Jenkins v. Rainner,* 69 *N.J.* 50, 350 *A.*2d 473 (1976), the New Jersey Supreme Court discussed the substantial need/undue hardship requirement in the context of motion picture footage reportedly showing plaintiff in physical activity at variance with her claim for damages. At issue was plaintiff's request for pretrial discovery of the film. The Court interpreted the standard to require disclosure. First the Court noted that "substantial need" resulted from the inherent weakness of the medium:

> The camera itself may be an instrument of deception, capable of being misused with respect to distances, lighting, camera angles, speed, editing and splicing, and chronology. Hence, 'that which purports to be a means to reach the truth

may be distorted, misleading, and false.' *Snead v. Amer. Export–Isbrandtsen Lines, Inc.,* 59 *F.R.D.* 148, 150 (E.D.Pa.1973). [*Id.* 69 *N.J.* at 57, 350 *A.*2d 473].

Because surprise at trial would leave an adversary ill-equipped to test the film or, at the very least, would result in delay as proceedings were suspended to accommodate same, the Court deemed the first prong satisfied. Additional support for this conclusion existed in the potential for settlement should the film prove accurate as well as the judicial policy in our state favoring full and open discovery. *Id.* at 57–58, 350 *A.*2d 473.

Second, the Court described the undue hardship plaintiff could experience in obtaining substantially the same materials by other means.

The point does not require much exposition. If the evidence is unique, such that a party cannot copy or otherwise recreate it, then the hardship in obtaining a substantial equivalent seems manifest. Defendants do not offer any suggestion as to what steps plaintiff might now take to reproduce the evidence contained in their motion pictures. The likelihood of any substitute, were we able to think of one, being the substantial equivalent of the films is slim indeed, given the tremendous impact of movies. *See Balian v. General Motors,* 121 *N.J.Super.* 118, 128 [296 *A.*2d 317] (App.Div.1972); Paradis, "The Celluloid Witness," 37 *U. Colo.L.Rev.* 235. Plaintiff herein has satisfied the requirement of the Rule. [*Id.* 69 *N.J.* at 58, 350 *A.*2d 473].

■ In the context of witness statements, this court can employ much of the same analysis. Thus, if one party possesses the written statement of a witness with relevant knowledge of the underlying action, "substantial need" arises for precisely the same reasons as described by the Supreme Court in *Jenkins v. Rainner, supra.* Faced with a damaging written statement at trial, plaintiff is left with two options: either limp forward with a defense to the document or request an adjournment to test its allegations. One unfairly prejudices an applicant, the other unacceptably delays the proceedings. Neither comports with the dictates of substantial justice. This court holds that when such statements exist, a request for them *ipso facto* satisfies the first prong of the rule.

■ The second requirement for discovery under *R.* 4:10–2(c) implicates slightly different considerations. While a moving picture film purporting to undermine a plaintiff's claim for

damages could never be replicated, one could not say the same for witnesses' statements. Perhaps the witness could furnish the party with an exact replica of the former statement. Moreover, once a party makes the existence of a statement known, any other party may always take that witness's deposition. Obviously, if the witness is unavailable or otherwise unwilling to be deposed, then undue hardship manifests itself and sustains the test for discovery. However, when a party does not take a deposition (the moving party bears the burden of demonstrating a good faith effort in the event that that party failed to take a deposition), the party seeking discovery of the former statement must demonstrate that something about it justifies discovery even given the apparent cooperation of the subject witness. A hard and fast rule in this regard is not possible. Nonetheless, courts in other jurisdictions interpreting essentially identical rules have described a number of appropriate situations in which the statements must be produced: (1) where a witness, although submitting to a deposition, evinces such hostility as to render his latter statements suspect; (2) the inability of the witness to recall details about the event in question; (3) any other factual scenario which demonstrates a probability that the two statements may differ in any material respect. *Knight v. Presbyterian Hospital Center,* 98 *N.M.* 523, 650 *P.*2d 45 (Ct.App.1982). *See also Klaiber v. Orzel,* 148 *Ariz.* 320, 714 *P.*2d 813 (1986).

Based on the foregoing, the court rules as follows: In *Maguire v. General Motors,* plaintiff's motion is denied without prejudice. The lawyer-client privilege is obviously not implicated when fact witnesses, as opposed to witnesses who are employed by a party, give written statements. Nevertheless, plaintiff has thus far failed to establish that an adequate basis exists under *R.* 4:10–2(c) for the discovery she seeks. Prior to reapplication, plaintiff is directed to take the depositions of the three witnesses who have given statements. If thereafter plaintiff still wishes to obtain copies of the original statements, she will have to convince the court that something about the

earlier statements rendered the deposition testimony *potential-ly* inadequate. Given that no grounds have yet been alleged, the court finds it unnecessary at this juncture to comment further. Suffice it to say that any such request should proceed by affidavit and formal motion which this court will judge in accordance with our Supreme Court's very strong commitment to full and fair discovery procedures. *Jenkins v. Rainner, supra,* 69 *N.J.* at 56, 350 *A.*2d 473.

In *Wagi v. Silver Ridge Park West,* the application to require the production of the statement of the Berkeley Township's employee is denied without prejudice pending a more detailed accounting of the statement's genesis. If the individual gave the statement at the personal direction of an attorney or simply at his behest, the statement clearly falls under the rule articulated in *Macey* and the party need not reveal same absent a showing consistent with *Evid.R.* 26(2) and the reported case law thereunder. Likewise, if the individual gave a statement without the involvement of an attorney but at the direction of the employee's supervisor, a representative of the insurance carrier, or simply on the employee's own volition, the statement falls under the work product exception of *R.* 4:10–2(c) and must be analyzed in accordance with the previous section of this opinion. If the anticipated deposition of the township's employee raises circumstances as described above, justifying reevaluation of this statement, the court invites a motion to reconsider.

Finally, and as previously noted, plaintiff's motion in *Austin v. Shop Rite of Manahawkin,* is granted insofar as it seeks the names and addresses of those who have given written statements. Discovery of the statements themselves must await reapplication consistent with other portions of this opinion.

The court's holdings with regard to this group of cases fully comports with the state of the law as it currently exists. However, notwithstanding same, this court does recognize the clear emerging trend in civil cases which de-emphasizes the

adversarial process, encourages the view of the trial as a search for the truth, and would support open revelation of witness statements. This court would support such a conclusion. Indeed, a situation could arise where an attorney takes the statement of an eye witness whose version of the facts is adverse to the interests of the attorney's client. During deposition, the eye witness could conceivably testify completely in favor of the attorney's client. In such a circumstance, the present state of the law would appear to place the attorney in a difficult ethical/malpractice quandary. By withholding the previous totally inconsistent statement, would the attorney be violating ethical obligations? On the other hand, would the attorney be committing malpractice by turning over a statement which is adverse to his client's interests? Until higher authority modifies the court rule, the concept of work product and the attorney-client privilege, this court must hold as indicated.

All moving counsel are directed to submit orders consistent with this opinion.

580 A.2d 1101
BEVERLY BUNDY, PLAINTIFF, v. WALTER SINOPOLI, M.D.;
JOHN DOE; JAMES DOE AND CHARLES DOE, (NAMES
BEING FICTITIOUS), DEFENDANTS.

Superior Court of New Jersey
Law Division

February 21, 1990.