749 A.2d 372 (2000)
330 N.J. Super. 190
Luisa SUANEZ, Plaintiff-Appellant,
v.
Jennifer EGELAND, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted March 14, 2000.
Decided April 17, 2000.
*373 Anthony J. Brady, Jr., Voorhees, for plaintiff-appellant.
Powell, Birchmeier & Powell, for defendant-respondent (James R. Birchmeier on the brief).
Before Judges PRESSLER, CIANCIA and ARNOLD.
The opinion of the court was delivered by CIANCIA, J.A.D.
In this rear-end-hit, automobile-negligence action, liability against defendant Jennifer Egeland was conceded and a jury trial was held as to damages only. The primary issue at trial was whether plaintiff Luisa Suanez sustained injuries sufficiently serious to overcome the strictures of the verbal threshold statute. N.J.S.A. 39:6A-8.a. The jury found that she had not suffered such injuries and a judgment of no cause for action was entered. We now reverse that judgment and reinstate plaintiff's complaint.
Plaintiff essentially raises two issues on appeal, one concerning the playing of a video tape as part of a defense expert's testimony and a second dealing with the trial court's ruling that plaintiff could not read to the jury a medical report prepared by a defense physician who was not called to testify. We find no merit in the latter contention because we are satisfied that on the facts here presented the doctor's report did not constitute an adoptive admission of the defendant. Skibinski v. Smith, 206 N.J.Super. 349, 353-354, 502 A.2d 1154 (App.Div.1985).
We do find merit, however, in the contentions concerning the video tape. The playing of the video tape came about as follows. Plaintiff's primary contention was that she suffered a lower back disc herniation at the L4-5 level, as a result of the impact occurring when defendant's vehicle rear-ended the stationary or slowly moving vehicle plaintiff was riding in as a front seat passenger. It was defendant's contention that the accident was so minor it could not have caused plaintiff's herniated disc. To advance that proposition defendant called Lawrence Thibault, a professor of bio-engineering, as an expert witness. After an appropriate voir dire, Thibault was found qualified "in the area of bio-mechanics."
Thibault testified in some detail concerning the force necessary to cause a disc herniation such as that claimed by plaintiff. His conclusion was that the impact of defendant's moving vehicle upon the vehicle occupied by plaintiff was insufficient to cause a herniated disc. In reaching that opinion he relied on a variety of information, including the accident report, deposition testimony, medical records and pictures of defendant's vehicle, although not pictures of the vehicle plaintiff occupied. He also based his opinion on a "variety of studies" including, "a very specific study of measuring the forces acting on an anthropomorphic dummy, a test dummy, a car crasha federal standard car crash dummy called hybrid three, where instruments are in the head and neck, the lumbar spine, throughout the dummy's body, subjected to low speed rear end impacts of varying degrees."
Although not previously disclosed to plaintiff's attorney, Thibault had brought to court a short video tape depicting a car crash dummy in an automobile being struck at five miles-per-hour. Thibault testified that he relied on that video tape, in part, in formulating his opinion. Over plaintiff's objection the video was played for the jury. We find that the playing of the video tape, under the circumstances here presented, constituted prejudicial error. We reach that conclusion for the following reasons.
The tape was not provided to plaintiff on discovery although it certainly should have been. Plaintiff chose not to depose Thibault, but she did submit interrogatories to defendant seeking "the substance *374 of the facts and opinions to which your experts are expected to testify and a summary of the grounds for each opinion." Although the interrogatory might have been more specific, it was certainly sufficient to discover a video tape an expert witness not only relied upon but which he planned to show to the jury. As Justice Clifford said in Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976), when discussing the discoverability of motion picture films taken of plaintiff by defendant in a personal injury action:
Our court system has long been committed to the view that essential justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts. See, e.g., In re Selser, 15 N.J. 393, 405, 105 A.2d 395 (1954). Twenty-five years ago Chief Justice Vanderbilt pointed out:
Our Rules for discovery ... are designed to insure that the outcome of litigation in this State shall depend on the merits in the light of all of the available facts, rather than on the craftiness of the parties or the guile of their counsel. [Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 338, 78 A.2d 705 (1951).]
This policy is in keeping with the modern trend which recognizes "the need to make available to each party the widest possible sources of proof as early as may be so as to avoid surprise and facilitate preparation." McCormick, op. ct. supra, § 96 at 202.

[Id. at 56-57, 350 A.2d 473.]
In conjunction with the question of surprise to the plaintiff was the manner in which the video was presented to the jury and its content. The video apparently represented only a reference source Thibault had relied upon and it was not intended as substantive evidence. As we understand it, the tape was supposed to assist the jury in understanding Thibault's expert opinion. Indeed, the tape was never moved into evidence. These distinctions, however, were not made clear to the jury. The jurors were never instructed as to the limited purpose for which the video was being shown. From the jury's point of view the video was indistinguishable from any other evidence.
Compounding this problem of the video being perceived as substantive evidence is defendant's failure to lay a proper foundation for its introduction. Thibault said the video was made by the consulting company with which he was affiliated, but he added very little to explain the circumstances surrounding its creation. He apparently did not make the video himself nor does it appear that he was present when the video was made. His assurances that it was "internationally known" and that "[e]veryone uses this as a standard for looking at rear-end impact" provided little additional hard information as to the circumstances surrounding the creation of the video.
In Balian v. General Motors, 121 N.J.Super. 118, 296 A.2d 317 (App.Div. 1972), certif. denied, 62 N.J. 195, 299 A.2d 729 (1973), we specified four elements ordinarily required for authentication of a video tape. One of those elements was evidence concerning the circumstances surrounding the taking of the film. Over the years authentication requirements have become more flexible, perhaps because the technology has become more commonplace. See, e.g., State v. Wilson, 135 N.J. 4, 637 A.2d 1237 (1994); N.J.R.E. 901. Nevertheless, authentication must establish that the video tape is an accurate reproduction of that which it purports to demonstrate. We find that the information presented to the trial court at the time it ruled the tape could be shown was insufficient to meet that standard.
The differences between the test depicted on the video tape and the actual accident were many, including the use of Nissan Pulsar vehicles in the video, whereas the actual cars involved in the accident were a Dodge and an Oldsmobile. Thibault maintained that all of the differences *375 were irrelevant because the point of the video and the point of his opinion was that the minimal impact of defendant's vehicle on the vehicle occupied by plaintiff was insufficient to cause a disc herniation. Our concern, however, is that the video, in a graphic manner, supported Thibault's opinion with an apparently scientific demonstration. We have viewed the video as part of the record on appeal. It is not dramatic or sensational but it is certainly capable of influencing a jury. We note particularly that the extreme slow motion gives the impression of much less movement and thus less impact than would be the case if the video was at normal speed. As our Supreme Court said in State v. Dixon, 125 N.J. 223, 278, 593 A.2d 266 (1991), showing a film is qualitatively different from showing still photographs. A fortiori, it is qualitatively different from a narrative description. There is a danger that a jury will place inordinate weight on the moving pictures. Ibid.; Balian, supra, 121 N.J.Super. at 128, 296 A.2d 317.
In light of the surprise to plaintiff's attorney, the failure to instruct the jury as to the limited purpose of the video, the absence of sufficient foundation to support the video's admission and the influential nature of the video, particularly as played in slow motion, we are satisfied that the showing of the tape improperly prejudiced the plaintiff. Compare Crispin v. Volkswagenwerk AG, 248 N.J.Super. 540, 556, 591 A.2d 966 (App.Div.), certif. denied, 126 N.J. 385, 599 A.2d 162 (1991), where we found that films of crash tests involving dummies had been properly excluded as being more prejudicial than probative.
Finally we add that although video tape technology may now be commonplace, the cautionary comments of Justice Clifford in Jenkins v. Rainner, supra, remain as valid today as they were almost twentyfive years ago: "[t]he camera itself may be an instrument of deception, capable of being misused with respect to distances, lighting, camera angles, speed, editing and splicing, and chronology." 60 N.J. at 57, 286 A.2d 52; accord Wagi v. Silver Ridge Park W., 243 N.J.Super. 547, 559-560, 580 A.2d 1093 (Law Div.1989). In light of these possibilities an adversary should not be confronted with a video tape for the first time on the day of trial. Without prior notice and time to prepare, an attorney is ill equipped to meaningfully test the validity of the scenes depicted on the tape.
The judgment dismissing plaintiff's complaint is reversed and the matter remanded for further proceedings.