**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5200-17T3

IN THE MATTER OF THE
ESTATE OF RUDOLPH HAUKE,
deceased,
AND OF THE RUDOLPH HAUKE
FAMILY REMAINDER TRUST
AND MARITAL TRUST

and

IN THE MATTER OF THE
ESTATE OF HELEN HAUKE,
deceased,
AND OF THE HELEN HAUKE
FAMILY REMAINDER TRUST
AND MARITAL TRUST.

_____

Argued March 2, 2020 – Decided March 25, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket Nos. P-000323-16 and P-000324-16.

Marco Aurelio Laracca argued the cause for appellants Thomas Hauke and Gregory Hauke (Bio & Laracca, PC, attorneys; Kristen Lynn Troncoso, on the briefs).

Joel Andrew Davies argued the cause for respondent Paul Hauke (Taff, Davies & Kalwinsky, attorneys; Joel Andrew Davies, on the brief).

PER CURIAM

Gregory Hauke (Gregory) and Thomas Hauke (Thomas) (the co-executors) appeal from a May 23, 2018 judgment approving formal accountings of estates and trusts of their parents Rudolph B. Hauke (Rudolph) and Helen P. Hauke (Helen) and imposing substantial surcharges on the co-executors.[1] The judge conducted a five-day hearing, entered the judgment, and rendered a comprehensive oral opinion, which is contained in a seventy-seven-page transcript. We affirm substantially for the reasons expressed by the judge, but remand solely for her to consider whether a related release's language insulated the co-executors from personal liability.

The decedents, who died in 2011 and 2012, had four children: The co-executors; Richard (who is not involved in this appeal); and Paul. Thomas and Gregory hired Piper Financial Solutions, Inc. (Piper Financial), an accounting company wholly owned by Thomas, to handle the estates' and trusts' accountings. After more than a year passed without receiving any accountings from the co-executors, Paul filed an action seeking to compel accountings,

---

[1] We refer to many of the individuals in this appeal by their first name because they share the same last name. We mean no disrespect by doing so.

which led to an October 30, 2013 judgment ordering the co-executors to undertake the accountings. In April 2014, the judge entered another order compelling the accountings, which they failed to do.

In July 2014, the judge removed the co-executors for failure to comply with these orders and appointed an administrator. The administrator attempted to do the accountings, but then filed a motion to enforce litigant's rights alleging that the co-executors failed to cooperate. In June 2015, the judge compelled the co-executors to produce tax records, and her order also provided that if they failed to cooperate, the administrator should apply to the judge for an order holding them in contempt of court.

Regarding Helen's estate, the parties litigated issues involving non-probate assets and change of beneficiary claims. On those issues, the judge conducted a trial in January 2016. On the second day, the parties settled the matter and entered into a written Consent Judgment (the January CO) and Stipulation of Settlement, filed on January 7, 2016. The Stipulation provided for accountings to be filed with the Monmouth County Surrogate's Office and permitted the parties to file exceptions to the accountings, but prohibited them from appealing the court's determination about the exceptions In a related document, the parties released any additional claims against each other, agreed not to sue each other, or seek to execute upon any judgment (the Release).

That September, the administrator filed two separate accountings, one for the period of October 10, 2011 through September 23, 2014, and one for the period of September 24, 2014 through August 18, 2016.[2] Paul filed exceptions to the accountings on or about June 28, 2016. The co-executors filed a response to Paul's exceptions on August 17, 2017, but they did not file any exceptions to the administrator's accountings.

The judge performed the hearing to address the accountings and exceptions over a five-day period in May 2018. She issued an oral opinion on May 23, 2018. Notwithstanding the parties' agreements in the January CO and Stipulation and the Release, this appeal followed.[3] This appeal is only pertaining to the May 23, 2018 judgment regarding the trusts' and estates' formal accountings.

On appeal, the co-executors argue that the trial judge abused her discretion because her findings were unsupported by substantial credible evidence. They also contend that the judge erred in four other ways, by: (1) Refusing to hear argument or consider the co-executors' counsel's brief as to the Release; (2) refusing testimony and a proffer as to alleged incomplete

---

[2] The first accounting was for the time period before the administrator was appointed; the second was for the period following his appointment.

[3] Thomas, Gregory, and Richard initially filed this appeal, but Richard was dismissed, at his request, by an October 30, 2018 order.

accountings; (3) denying Piper Financial accounting fees; and (4) disallowing commissions to the co-executors after they were removed as the estates' and trusts' co-executors. We reject the co-executors' argument that the judge abused her discretion, misapplied applicable law, and failed to make appropriate findings of fact.

This court's review of a trial judge's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). In our review, we are required to "defer to a judge's factual findings in a non-jury matter when those findings are supported by adequate, substantial and credible evidence." Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 284 (App. Div. 2007) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). This court owes "'deference to those findings of the trial judge which are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). But a trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1955). Appellate review of a trial judge's legal

conclusion is de novo. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006).

While the co-executors argue that the judge did not make "specific factual determinations," they fail to identify which factual determinations the judge failed to make. The co-executors argue that their case "is directly on point" with In re Bloomer, 37 N.J. Super. 85 (App. Div. 1955), but they fail to draw any comparisons between the two. In In re Bloomer, the judge began the hearing by indicating that it would be impossible for him to consider evidence that was presented to him just before the hearing when making his decision. 37 N.J. Super. at 88. He then proceeded to make factual determinations and an award without reviewing this evidence. Id. at 93. This court remanded because the judge failed to review all submissions before making his determination.

However, here, the judge engaged in an extensive analysis. The judge rendered a comprehensive opinion that discussed the case in an organized manner. She began by detailing the case's extensive procedural history. She then announced the case law she relied on in making her ruling. The judge went through each party and witness and discussed her credibility findings, explaining how she came to each determination. Finally, she went through each exception, detailing her ruling as to each. The judge did not indicate that

she was unable to fully review all submissions by parties, and the co-executors have failed to allege otherwise. Therefore, the judge did not fail to make specific factual determinations.

The co-executors mainly contend that the Release should have barred any surcharge claims against them. Paul argues they waived any right they had to claim the Release because they failed to raise it as an affirmative defense, and they waited to raise it until closing arguments, when it was clear the judge would not rule in their favor. Paul also contends that even if the judge considered the co-executors' argument, she would have found it to be meritless, as the January CO and Stipulation, entered into on the same day as the Release, specifically called for these accountings to be completed and exceptions to be filed. Read in conjunction, Paul suggests that the claims that this Release purported to release did not include the accountings or the exceptions. We will elaborate on these points.

The January CO and Stipulation stated that "[the administrator], in his fiduciary capacity, shall be permitted to hire an accountant to prepare . . . accountings with the costs of same to be paid from the Estate[.]" It allowed "parties . . . to file exceptions to the accounting(s) pursuant to New Jersey Court Rules and <u>the parties further agree that they will not appeal the [c]ourt's</u>

<u>ruling on the accountings and exceptions</u>[.]" (Emphasis added). The Release stated that the parties

> release and give up any and all claims and rights which Releasors may have against Releasee. This releases all claims and rights which Releasors may have against Releasee. This releases all claims, including those of which Releasor is not aware and those not specifically mentioned in this Release. . . . <u>The parties retain the right to file exceptions to the Estate/Trust accountings</u> pursuant to New Jersey Court Rules and as provided in the Consent Judgment and Stipulation of Settlement.
>
> . . . .
>
> <u>The parties covenant not to sue each other with respect to any matter [and] . . . to execute upon any judgment</u>[.]
>
> [(Emphasis added).]

The co-executors did not mention the Release to the judge until the day before the end of trial.

Rule 4:5-4 requires that "[a] responsive pleading shall set forth specifically and separately a statement of facts constituting an avoidance or affirmative defense including . . . release[.]" "[O]rdinarily an affirmative defense that is not pleaded or otherwise timely raised is deemed to have been waived." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.21 on <u>R.</u> 4:5-4 (2020); <u>see, e.g.,</u> <u>Cole v. Jersey City Med. Ctr.</u>, 215 N.J. 265, 281 (2013);

Lebron v. Sanchez, 407 N.J. Super. 204, 220 (App. Div. 2009); Hill v. N.J. Dep't of Corr. Comm'r Fauver, 342 N.J. Super. 273, 294 (App. Div. 2001).

In Jersey City Medical Center, the respondent failed to raise an arbitration provision in its affirmative defenses. 215 N.J. at 268. The party proceeded to prepare to litigate, but then introduced this provision three days before trial. Id. at 269. In considering the fact that the party chose to litigate the case for twenty-one months before eventually presenting this arbitration clause, the Court concluded that they waived the defense. Id. at 281. The Court placed emphasis on the fact that the parties spent substantial time preparing for litigation, engaging in motion practice, and conducting extensive discovery. Id. at 282.

Here, the co-executors let approximately twenty-three months elapse before their counsel brought the Release to the judge's attention. The parties completely prepared themselves for trial. Counsel proceeded through trial and waited until closing argument before he raised the issue. Even then, he still did not provide the actual Release agreement to the judge. Under the circumstances here, we fully understand the judge's refusal to consider it.

Even if the judge considered the Release, Paul maintains the judge would have still found that the co-executors were liable for the surcharges. The Release specifically carves out an allowance for the accountings and

exemptions to be filed in Superior Court. The surcharges against the co-executors arise from those exemptions. Further, if the co-executors wanted to make the argument that the Release should bar all claims, we must also consider the January CO and Stipulation, which are to be read in conjunction with the Release. The January CO and Stipulation specifically states that "the parties further agree that they will not appeal the [c]ourt's ruling on the accountings and exceptions." The co-executors appealed notwithstanding the appeal prohibition.

Nevertheless, the co-executors waited until closing arguments to present the Release to the judge. In their reply brief, the co-executors concede that the Release should have been raised in a motion in limine, but that this court should relax the rule of waiver to prevent a "substantial injustice." On this record, however, we are unable to resolve all arguments as to the Release, especially because at oral argument before us, the parties disputed whether the Release insulated the co-executors from personal liability. We therefore remand on this issue, and if appropriate, the determination of whether sanctions for the co-executors delay in raising the issue are appropriate.

We turn next to the co-executors contention that the judge incorrectly excluded evidence of missing exceptions to the accountings that was presented during the third week of trial. The judge denied the application to introduce

10

this evidence because it would be "highly prejudicial to the other parties in the case."  The co-executors argue that the judge erred by refusing to allow testimony or counsel's proffer as to why the accountings were incomplete.

"[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of: (a) Undue prejudice, confusion of issues, or misleading the jury; or (b) Undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.  The trial judge is in the "best position to engage in the balancing process" that is required by this rule. State v. Ramseur, 106 N.J. 123, 266 (1987).  Determinations as to this rule will not be overturned on appeal unless it can be demonstrated that there was an abuse of discretion—a "'finding . . . so wide of the mark that a manifest denial of justice resulted.'"  State v. Cole, 229 N.J. 430, 449 (2017) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

In Balian v. General Motors, 121 N.J. Super. 118, 129-32 (App. Div. 1972), the trial judge declined to allow movies, offered into evidence by the defendants, that demonstrated a vehicle would still be steerable, despite the existence of a defect cited by the plaintiffs.  The videos were taken after trial commenced and without the plaintiffs' prior knowledge.  Id. at 129.  In addition to citing the potential prejudice, the court noted, "[t]he strongest counter-factor militating against the admission of these movies is the element

of unfair surprise which was engendered by the manner in which the movies were prepared and presented." Ibid.

Similarly, in Suanez v. Egeland, 330 N.J. Super. 190, 194, 196 (App. Div. 2000), the court cited unfair surprise when concluding that the defendant's video should have been excluded. The defendant provided the tape to the plaintiff during discovery, thus denying the plaintiff's attorney the opportunity "to meaningfully test the validity of the scenes depicted." Id. at 196; see also Manorcare Health Servs., Inc. v. Osmose Wood Preserving, Inc., 336 N.J. Super. 218, 235-36 (App. Div. 2001) (deeming relevant evidence inadmissible on grounds analogous to unfair surprise because one party blocked the other's access to that evidence during discovery).

Here, the co-executors sought to introduce new evidence of missing exceptions to the accountings nearly three weeks into trial. As the judge noted, they were provided with the accountings over a year and a half before trial started. The judge emphasized it would be prejudicial for her to allow the co-executors to introduce this evidence weeks into trial. As in Suanez, this late introduction deprives opposing counsel of the ability to examine the evidence and test its validity before it is presented at trial. 330 N.J. Super. at 196.

The co-executors contest the fact that the judge would not allow counsel to proffer why the missing accountings were late. They now claim that it was "impossible" for them to have realized that accountings were missing. As the judge pointed out, Thomas is a CPA, and thereby is "in a particularly unique position in order to be able to determine th[e]se issues." The co-executors claim that Thomas did a "cursory review" of the accountings, but he "did not go through the extremely voluminous [a]ccountings line by line." They had access to the accountings, including evidence of the purported missing accountings, thus it was possible for Thomas to discover this information before trial. Although the co-executors argue in their merits brief that they "are not appealing the [c]ourt's ruling on the [a]ccountings and [e]xceptions," they now argue that the accountings are incorrect because certain evidence was excluded. The judge did not abuse her discretion in denying the admission of this evidence. She properly reasoned that the introduction of this evidence would have been unfair to the opposing party.

Next, the co-executors argue that the commissions allotted to Piper Financial, wholly owned by Thomas, were erroneously disallowed. Piper Financial was employed to account for all of the estate and trust transactions from the date of Rudolph's death to the time the administrator was

13

appointed—approximately three years. The co-executors assert that the judge should have allowed Piper Financial to collect its accounting fee of $118,533.

Fees occurred on behalf of the estate are subject to reduction or rejection based on whether they benefitted the estate. See, e.g., In re Bloomer, 37 N.J. Super. at 91; In re Estate of Stone, 21 N.J. Super. 117, 130-32 (Ch. Div. 1952). Fees are only permitted to the extent that they are reasonable. See, e.g., 7A N.J. Practice, Wills & Administration § 1547, at 97 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 1984). Therefore, the trial judge will examine fees before permitting payment, in whole or in part, to determine whether any fees benefitted the estate or are reasonable. Related to a trustee's accounting, the burden is on him or her to establish items of discharge by proper proof. See Villa Site Co. v. Copeland, 91 N.J. Eq. 503, 512 (1920). This court reviews those decisions on an abuse of discretion standard. See In re Estate of Moore, 50 N.J. 131, 149 (1967).

In In re Estate of Oliver, 3 N.J. Misc. 453, 463-64, 466 (1925), on exceptions to the final account of the executor, the judge disallowed a hardware bill and payments to public service companies, evidenced by the accountant's canceled personal check. Further, on exceptions to the final account of the administrator, the judge disallowed an item for payment of

insurance premiums evidenced by the accountant's canceled check. Id. at 466-67.

On cross-examination, Thomas testified to the following:

> [Counsel:] Where on [the exception] does it reference the Estate of Helen Hauke?
>
> [Thomas:] Well, it doesn't reference the Estate of Helen Hauke. It happens to reference the Estate in Trusts. But it doesn't re[f]erence the specific Hauke Estate in Trust.
>
> . . . .
>
> [Counsel:] And nowhere on [the exception] does it reference the Estate of Rudolph Hauke, correct?
>
> [Thomas:] No, it does not.
>
> . . . .
>
> [Counsel:] And in fact this document simply was created by you on May 7, 2018, correct?
>
> [Thomas:] That's right, yes.
>
> [Counsel:] And there's no reference whatsoever to any specific work performed, this is a lump sum transactional summary, correct?
>
> [Thomas:] That's correct, yes. As I explained to you before our company works on a fixed fee . . . . So we do fixed fee work and this is just a measure for me of whether or not we can make any money or not.
>
> . . . .

15

[Counsel:] So the only person that could decipher [the exception] is you, the person that created it, correct?

[Thomas:] I would say so, yeah.

As demonstrated, Thomas was unable to show proper support for his claims that his accounting company, Piper Financial, should be granted the exception. He submitted records to the judge that he created for his own personal use, which only he understood.

The judge found Thomas incredible, particularly when discussing expenses that Piper Financial handled.

> He stated at one point . . . something like under God's green earth he would not have issued a check to cover an expense unless he had the documentation to back up the expense. And yet, in example after example[,] he failed to produce the documentation to back up the expense.

The judge further noted that she granted the parties leeway in trying to establish support for the items at issue with respect to the exceptions that were made. In trying to sustain his burden, Thomas repeatedly stated that everything needed to support the exceptions should "be in the box" that the judge received. He blamed the lack of support on the fact that "somebody took it out of the box."

The judge placed emphasis on the fact that Thomas was an accountant, and that his lack of knowledge as to the basis of the transactions "gave him

16

little, if any, credibility."   Because the judge found Thomas's testimony not credible, and because the co-executors failed to produce evidence supporting their exceptions-claims for Piper Financial, the judge did not abuse her discretion. See Kas Oriental Rugs, 394 N.J. Super. at 284; Rova Farms, 65 N.J. at 483-84.

Finally, we reject the co-executors' argument that the judge erred in denying them commissions for the services they performed on behalf of the estates before they were removed and replaced by the administrator.

N.J.S.A. 3B:18-5 gives a trial judge the right to deny executor's commissions when he or she is removed for any cause.  Courts have typically held that an executor's unfaithful execution of duty deprives him or her of the right to commissions.  In re Estate of Megargee, 117 N.J. Eq. 347, 351 (1934); see, e.g., In re Prob. of Alleged Will of Landsman, 319 N.J. Super. 252, 271 (App. Div. 1999) (disallowing commissions under a will that was determined to be invalid based on the executor's wrongful conduct, even though executor fraud was not established); Pyatt v. Pyatt, 44 N.J. Eq. 491, 495-96 (Prerog. Ct. 1888) (denying executor commissions where she failed to account for the twelve years after her appointment, and then only did so in obedience to citation); In re Wordell, 12 A. 133, 135-36 (N.J. Ch. Div. 1888) (denying

commission where there has been a delay, negligence, and expense in the estate's management and settlement).

The co-executors assert, without legal support, "[s]o long as an executor acts in good faith and with ordinary discretion and within the scope of his powers[,] his acts cannot be successfully assailed." cf. In re Landsman, 319 N.J. Super. at 271 (finding fraud is not required to deny an executor commissions). The judge noted that the co-executors refused to provide the accountings, even after being ordered to do so twice. They were finally removed as co-executors after being found to have violated Paul's rights and for failing and refusing to comply with the two previous court orders. The trial judge further emphasized that Gregory knowingly accepted commissions that were awarded by himself and Thomas after they were removed as the estates' executors. And "those commissions actually exceeded any amount that they normally would be entitled to[.]"

In sum, we affirm the trial judge's judgment, but remand to consider whether the Release insulated the co-executors from personal liability under the judgment and whether sanctions need be imposed. We take no position as to the outcome and leave the remand proceedings to the judge's discretion.

Affirmed and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

A-5200-17T3

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-5200-17T3