**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3024-23

KARIM LEKHAL,

     Plaintiff-Respondent,

v.

ANTHONY J. DEPASQUALE
2ND,

     Defendant-Appellant.

_____

          Argued December 16, 2026 – Decided April 30, 2026

          Before Judges Susswein and Augostini.

          On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2178-19.

          William J. Martin argued the cause for appellant (Martin Gunn & Martin, attorneys; William J. Martin and Michael A. Mascino, on the briefs).

          James Pocchia argued the cause for respondent (John J. Pisano, on the brief).

PER CURIAM

This personal injury case arises from a motor vehicle accident. Defendant Anthony J. DePasquale admitted to liability prior to trial; the only issue before the jury was the amount of damages to be awarded. Defendant appeals from a jury verdict awarding plaintiff Karim Lekhal $250,000. Defendant contends the trial court erred: (1) by allowing plaintiff's expert to use a video of a cervical discectomy procedure that had not been turned over in discovery and that involved another patient; (2) by providing an inadequate curative instruction in response to plaintiff's improper summation remarks about defendant's expert; and (3) by denying his motion for a mistrial. Defendant argues that the cumulative effect of the alleged errors warrants a new trial. After reviewing the record in light of the governing legal principles, we affirm.

I.

We presume the parties are familiar with the pertinent facts and procedural history, which we need only briefly summarize. This dispute arose from an August 7, 2017, motor vehicle accident in which defendant rear-ended plaintiff's stopped vehicle at a traffic circle. Plaintiff alleged that he suffered permanent injuries, including multiple herniated discs. He claimed that a cervical epidural injection and a cervical discectomy provided only temporary relief, and that his pain persisted thereafter.

2

A three-day jury trial limited to the question of damages was convened in late March 2024. During the direct examination of plaintiff's pain management doctor, Wael Elkholy, M.D., plaintiff sought to play an "exemplar video" of Dr. Elkholy performing a cervical discectomy on another patient. Defendant objected because plaintiff had not served a copy of the video and had not previously identified the video as an exhibit. Plaintiff replied that the video was not responsive to any of defendant's discovery requests. The trial court overruled defendant's objection, noting that it had wide latitude to admit demonstrative evidence. The trial court allowed the video to be played for the jury, reasoning that it would assist plaintiff's expert in describing the procedure. When asked during direct examination whether the video was "duplicative of the procedure" performed on plaintiff, Dr. Elkholy answered, "Yes."

During closing arguments, plaintiff's counsel improperly referred to reports authored by defendant's expert witness that were not in evidence to suggest that the expert had changed his trial testimony regarding the nature of plaintiff's injury. Counsel commented that the expert had played "[f]ast and loose with the evidence." Defendant objected and requested a curative instruction, arguing that defendant's expert did not testify about the reports

counsel had referenced. The court sustained the objection and gave a curative instruction after a lunch break.

The jury returned a unanimous verdict in plaintiff's favor, awarding $250,000 in damages. On April 8, 2024, the court entered an order confirming the judgment and awarding $41,330 in pre-judgment interest, resulting in a total judgment of $291,330.

On April 10, 2024, defendant moved for a new trial under Rule 4:49-1 and Rule 4:50. On May 10, 2024, the trial court heard oral argument on the motion. Defendant argued that he was entitled to a new trial based on: (1) the trial court's decision to permit plaintiff to show the jury an exemplar video that was not previously disclosed to defendant and that was "more prejudicial than probative;" (2) plaintiff's counsel's comments during summation; and (3) statements made by plaintiff's counsel during closing argument that defendant's expert was "playing fast and loose with the evidence." Defendant further argued that the cumulative effect of these three errors produced a miscarriage of justice.

At the conclusion of the hearing, the court denied defendant's motion in an oral decision, concluding that none of defendant's arguments warranted a new trial. Specifically, the court found that the video was demonstrative evidence, that it appropriately complimented the expert's testimony, and that its admission

4

fell within the court's discretion.  The trial court found that the video "was short in duration" and "had no sound" or narration.  The trial court further concluded that Dr. Elkohly "was best able to confirm that the exemplar video of the cervical discectomy was identical to the surgery that he completed on the plaintiff."  With respect to the summation comments, the court concluded that the curative instruction adequately mitigated any resulting prejudice.  The court issued a written order that same day, denying defendant's motion for a new trial.

This appeal follows.  Defendant contends that the video was unduly prejudicial because:  (1) plaintiff failed to disclose it prior to trial; (2) the video involved a different patient; (3) it risked confusing the jury; and (4) it was cumulative of the doctor's testimony.  Defendant also challenges the trial court's denial of his motion for a mistrial based on the improper remarks made by plaintiff's counsel during closing arguments.  Although the court issued a curative instruction, defendant contends that the curative instruction was neither prompt nor forceful enough to cure the resulting prejudice.  Defendant also appeals the denial of his post-trial motion for a new trial, raising essentially the same arguments regarding the video and summation comments.

II.

We first address defendant's contentions regarding the exemplar video. We begin our analysis by acknowledging the governing legal principles. An appellate court reviews a trial court's evidentiary rulings for an abuse of discretion. State v. Garcia, 245 N.J. 412, 430 (2021); Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). Because a trial court has wide discretion to determine the admissibility of evidence, "appellate review of evidence determinations should be limited." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383 (2010). The reviewing court "will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Rowe, 239 N.J. at 552 (alteration in original) (quoting Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)). Thus, "the latitude initially afforded to the trial court in making a decision on the admissibility of evidence—one that is entrusted to the exercise of sound discretion—requires that appellate review, in equal measures, generously sustain that decision, provided it is supported by credible evidence in the record." Est. of Hanges, 202 N.J. at 384.

Pursuant to N.J.R.E. 611, the trial court has broad discretion to control the presentation of evidence. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 611 (2023-2024). The trial court's authority under

6

N.J.R.E. 611 includes a "wide latitude" in admitting demonstrative evidence. Ibid. Demonstrative evidence is "evidence that replicates the actual physical evidence," "demonstrates some matter material to the case," or "illustrates certain aspects of an expert's opinion." Rodd v. Raritan Radiologic Assocs., P.A., 373 N.J. Super. 154, 165 (App. Div. 2004) (internal citations omitted). Such evidence usually takes the form of a model, diagram or chart and is used "by a witness to illustrate his or her testimony and facilitate jury understanding." Ibid. (quoting Macaluso v. Pleskin, 329 N.J. Super. 346, 350 (App. Div. 2000)).

The court's discretion to admit demonstrative evidence, however, is not unfettered. First, "the admissibility of such evidence turns, in part, on whether it 'sufficiently duplicates the original event.'" Rodd, 373 N.J. Super. at 165 (quoting Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 14 (App. Div. 2003)). Further, the court's discretion to allow certain evidence under N.J.R.E. 611 must be balanced with N.J.R.E. 403, which states that relevant evidence may be excluded if "its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury; or (b) undue delay, waste of time, or needless presentation of cumulative evidence." See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 611 (2024-2025). As we stated in Rodd, demonstrative

evidence must be authenticated and relevant, and "its probative value must not be offset by undue prejudice, unfair surprise, undue consumption of trial time, or possible confusion of issues due to the introduction of collateral matters." 373 N.J. Super. at 165-66 (citing Balian v. General Motors, 121 N.J. Super 118, 127 (1972) and N.J.R.E. 403).[1]

## A.

To begin, we agree with defendant that the video should have been disclosed. However, as we discuss in Section B and Part IV, in these circumstances, this discovery violation does not warrant a new trial.

The record before us shows that the only interrogatories defendant served were the uniform interrogatories set forth in the court rules. Uniform Interrogatories to be Answered by Plaintiff in all Personal Injury Cases: Superior Court, Pressler & Verniero, Current N.J. Court Rules, Appendix II to R. 4:17-1, Form A, www.gannlaw.com (2025). Interrogatory twenty-three directs plaintiff to "[s]tate the substance of the facts and opinions to which your experts are expected to testify and provide a summary of the factual grounds for

---

[1] Considering the balancing required, where possible, courts should address many of the issues presented by this rule at a Rule 104 hearing outside the presence of the jury. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 611 (2024-2025).

each opinion." See ibid. In Suanez v. Egeland, we determined that an interrogatory with identical language was sufficient to require disclosure of a short demonstrative video that the defense expert relied upon to formulate his opinion and that was played for the jury. 330 N.J. Super. 190, 193-94 (App. Div. 2000). We stated, "[a]lthough the interrogatory might have been more specific, it was certainly sufficient to discover a video tape an expert witness not only relied upon but which he planned to show to the jury." Ibid.

Defendant contends that disclosure of the video was necessary pursuant to Form A Interrogatory number eighteen, which requires plaintiff to identify "any photographs, videotapes, audio tapes or other forms of electronic recording . . . made with respect to anything that is relevant to the subject matter of the complaint . . . and (f) if in your possession, attach a copy . . . ." See Pressler & Verniero, Current N.J. Court Rules, Appendix II to R. 4:17-1, Form A, www.gannlaw.com (2025).

Disclosure of the video may well have been required in response to defendant's interrogatories; however, putting aside discovery pursuant to interrogatories, plaintiff's counsel should have disclosed the video pursuant to Rule 4:25-7(b). That rule requires attorneys to exchange certain pre-trial information, listing all exhibits "including demonstrative exhibits prepared

before trial by fact and expert witnesses which shall be premarked for identification and as to which the attorneys shall confer before trial to agree, if they can, on admissibility." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:25-7 (2024). The "[f]ailure to exchange and submit all the information required by [Rule 4:25-7(b)] may result in sanctions as determined by the trial judge." R. 4:25-7(b).

However, under the circumstances presented here, failure to disclose the video does not categorically require a new trial. We conclude that the trial court did not abuse its discretion in declining to overturn the verdict, considering the minimal prejudicial effect of the video, which we next address.

B.

We now turn to defendant's arguments that introduction of the video was error warranting a new trial. Defendant argues that several cases compel that result, but we disagree. Defendant first relies on Rodd, in which we emphasized that the "probative value [of demonstrative evidence] must not be offset by undue prejudice, unfair surprise, undue consumption of trial time, or possible confusion of issues due to the introduction of collateral matters." 373 N.J. Super. at 165-66. Because defendant relies heavily on Rodd, we deem it appropriate to analyze that case closely.

In Rodd, we considered whether the plaintiff's use of demonstrative evidence in the form of computer magnified digital scans of a mammogram was unduly prejudicial to the defendant. Id. at 160-61. The underlying action was a wrongful death matter where the plaintiff alleged that the defendant had failed to diagnose the decedent with breast cancer following a mammogram performed approximately five years before the decedent died from breast cancer. Id. at 159-60. The critical disputed issue in Rodd was whether the defendant committed medical malpractice by not identifying small clusters of calcifications in the decedent's mammogram films. Id. at 160. The plaintiff's introduction of super magnified images, which made the calcifications appear larger than they would have on the original films, directly went to the central issue in that case. The plaintiff claimed that the computer enlargement was a demonstrative visual aid to allow the jury to better understand the expert's opinion. Id. at 167.

We remanded for a new trial, finding "the computer imagery displayed to the jury was unduly influential, potentially confusing, susceptible of being accepted as substantive evidence, and clearly capable of producing an unjust result." Id. at 170-71. We took issue with the fact that the trial court did not instruct the jury on the limited purpose of the images, stating, "[t]hey were never

11

told, for instance, that the computer images were only an aid to help understand the technical medical testimony as opposed to proof of what [the] defendant actually observed." Id. at 167. Moreover, we noted that the error was compounded by the fact that the defendant claimed that magnification of the image distorted the view, rather than clarified it. Ibid.

We further reasoned that by providing a "visual aid," the plaintiff had presented evidence that was testimonial in nature and capable of being mistaken as substantive evidence by the jury. Ibid. We noted that the images were substantive evidence because:

> [R]ather than being apprised that the computer imagery was not intended to be the exact replication of every detail that could or should have been seen by [the] defendant, the jury was repeatedly told by [the] plaintiff's expert just the opposite, namely, that the computer magnification was an identical representation of the images apparent on the mammogram films when viewed under the standard magnifying glass.
>
> [Ibid.]

We thus determined there was a danger that the jury would assume the defendant could have used the computer enhanced images to make his diagnosis, even though there was no evidence in the record that the digitally scanned mammogram images were accurate. Id. at 168. Thus, we concluded, the images provided the jury with independent and substantive evidence of an issue in

12

dispute. Ibid. Moreover, because the images could have distorted the view of the mammogram and were not a medically-accepted diagnostic tool, we concluded the error in showing the jury the images was not harmless. Id. at 170.

The facts of the case before us are markedly distinguishable from Rodd. Here, the cervical discectomy procedure was not in dispute, and, as discussed below, the exemplar video "sufficiently duplicates" the actual procedure. Id. at 165 (internal quotations and citations omitted). We therefore conclude that defendant's reliance on Rodd is misplaced.

Defendant also relies upon Macaluso, 329 N.J. Super. 346. In that motor vehicle accident case, we remanded for a new trial after the plaintiff played a video for the jury that depicted an animation of anatomical parts of the body and how injuries could cause damage to the body. We described the video as "a compilation of drawings and animation accompanied by a voice describing what is presented visually." Id. at 350. We also found the video "contained a great deal of subject matter that was not relevant to [the] plaintiff's precise medical condition and included speculation regarding the possible consequences of hypothetical issues" and thus should not have been shown to the jury. Id. at 353.

Unlike the situation in Macaluso, the video shown in this case does not have any narration or audio and is short in duration. Moreover, the video does

13

not contain information about medical procedures that were not relevant to plaintiff's condition—the video only depicted a cervical discectomy. Accordingly, defendant's reliance on Macaluso is misplaced. Cf. Agha v. Feiner, 198 N.J. 50, 67 (2009) (also finding that the plaintiff's reliance on Macaluso was misplaced).

Our decision in Suanez is also instructive here. In that case, we held that the accident reconstruction video utilized by the defense expert as a demonstrative aid should have been excluded because it was presented to the jury in extreme slow motion and did not accurately reflect the accident. Suanez, 330 N.J. Super at 195-96. At trial, it was defendant's contention that the accident was minor and could not have caused a permanent injury. Id. at 193. On appeal, we noted multiple discrepancies between the simulation video and the actual accident and concluded that the jury may have placed inordinate weight on the expert's video given its extreme slow motion. Id. at 195. Here, however, Dr. Elkholy testified that the exemplar video was duplicative of the procedure performed on the defendant. He further testified during his explanation of the procedure that the video was also of C5 C6—the same injury defendant sustained.

We are unpersuaded by defendant's argument that the video depicted a different surgical procedure from the one plaintiff underwent because in the video, Dr. Elkholy used a "mallet," but, defendant contends, plaintiff's medical records do not specifically refer to the use of a mallet.[2] Even accepting for the sake of argument that a mallet was not used in plaintiff's procedure, defendant does not explain how this singular purported difference in the two procedures would render the video wholly unreliable for purposes of serving as demonstrative evidence as distinct from substantive evidence. Said differently, the video "sufficiently duplicates the original event" to warrant its admissibility as demonstrative evidence. Rodd, 373 N.J. Super. at 165 (internal quotations and citations omitted).

We do agree with defendant that the trial court should have provided a limiting instruction to the jury on the use of the video as demonstrative evidence. It bears emphasis, however, that defendant did not request a limiting instruction. We acknowledge that, as a general proposition, a trial court should give a limiting instruction sua sponte "where it is necessary to avoid an unjust result." Feiner, 198 N.J. at 63 n.7. But here, the court's failure to provide the instruction

---

[2] Defendant has not provided the medical records in the record on appeal, and therefore, it is unclear whether the records note the use of a mallet.

sua sponte did not lead to an unjust result given the circumstances under which the video was introduced and the fact that the jury was expressly told the video was an "exemplar" and only being used to complement Dr. Elkholy's testimony. There was little if any risk that the jury was confused about the nature of the video because Dr. Elkholy told them that it was "an exemplar video" that he was using to assist in his explanation of the procedure. Having watched the video, we further note that a screen is displayed for viewers explaining that the footage is "a sample video" of a cervical discectomy procedure.

In sum, there is nothing in the record that indicates that allowing the jury to view the video produced an unjust result warranting a new trial. Even if the video had been excluded, it is not likely that the outcome of the trial would have been different. Without the video, the jury would still have heard Dr. Elkholy's testimony about the procedure, which defendant does not challenge. Thus, given the court's wide discretion to admit demonstrative evidence, Dr. Elkholy's telling the jury that the video was duplicative of the procedure he performed on plaintiff, and the video's short length and lack of audio, we conclude the trial court did not abuse its discretion in allowing the jury to view the video.

A-3024-23

III.

We turn next to defendant's contention that the trial court should have granted a mistrial based on comments made by plaintiff's counsel about defense expert Mark Berman, M.D. Defendant contends counsel's comments were inflammatory, constituted an attack on Dr. Berman's integrity, and referred to reports that were not in evidence. Defendant challenges the curative instruction issued by the court, arguing it was not firm, sharp, or forceful enough to cure the prejudice caused by the comments.

A.

In summation, plaintiff's counsel made references to and quoted from Dr. Berman's January and February 2020 reports, which were not in evidence. Plaintiff's counsel claimed that in a January 2020 report, Dr. Berman allegedly found plaintiff's mechanism of injury was consistent with trauma but later downplayed the herniation's significance. Counsel suggested that Dr. Berman changed his opinion to comport with his role as a defense expert. Counsel stated:

> We get Dr. Berman, who I submit to you is not a credible witness worthy of your consideration. And, I want to find out a few reasons why. First, he wrote multiple reports in this case. And, in one of his earlier reports he first acknowledges that the plaintiff did suffer an injury in this motor vehicle accident. That's

what he said. And, I want you to see how, in my opinion, he was jumping all over the place to get to a desired result.

So, in the earlier report of January of 2020 . . . I'm going to read this to you. Th[ese are] Dr. Berman's words. "The mechanism of injury does support an injury to the cervical spine." So, his initial thought is this man was hurt. And, then he's saying to himself, okay, I'm going to go to court someday, and I'm going to be called as a witness for the defendant. What am I going to say when I get there, because I wrote that the mechanism of injury does support an injury to the cervical spine.

So, he gives it some thought. And, at the same time, in February, he wrote another report. And, he initially says, when he looks at the MRI film, the words "no disc herniations[,"] okay? So, we have two opinions by Dr. Berman to start us off. Number one . . . the mechanism of the accident caused the injury, but I don't see any herniations.

Then he comes to a realization I've got to go to court, and I've got to face this jury, and I've got to say something about this case. What am I going to say? And, he looks at those MRI films, and he says to himself . . . I can't look at that film and tell this jury that there's no problem, that there's no herniated disc. . . I say there is no herniated disc.

But, now I'm looking at it, and I can't say that. So, what am I going to do? I got it. I'm going to tell this jury that the herniated discs are there, but they're small. They're just small, or they're not significant, or they shouldn't be causing him any pain. That's the best that he can do at this point.

18

. . . .

And, then, at the end of his testimony, I asked him questions on cross-examination about how he would treat his own patients and what opinions he would have with regard to his own patients. And, I asked him . . . and, I'm reading directly from the testimony you just heard.

"BY MR. POCCHIA:

Q In the course of treating your own patients over the years, have you ever offered an opinion to one of your own patients that they suffered a herniated disc as a result of trauma like a motor vehicle collision?

A Yes.

Q Okay. Doctor, let me understand this now. When it's your own patient when they have a motor vehicle accident and the MRI shows a herniated disc, you tell them, yeah, I think it was from the car accident. But, when you're hired by the defendant who did the rear end and you come to court, you say, no, no, no, it must be something else. Doctor, have you ever offered an opinion to one of your own patients that they were suffering from a herniated disc caused by a motor vehicle collision and the condition was permanent?

A Yes.

Q Once again, Doctor, when it comes to your own patients, you're not hesitant to

19

tell them, listen, this herniated disc is permanent, it's not going to fix itself. But, when you're hired by a defendant and come to court on a rear end case, then, no, this is not a permanent condition."

Fast and loose with the evidence, ladies and gentlemen.

A few moments later, plaintiff's counsel again mentioned Dr. Berman's January 2020 report. At that point, defense counsel requested a sidebar and asked for a curative instruction because there was no testimony about Dr. Berman's January or February 2020 report. The court told the parties it needed to review the record but sustained defendant's objection and allowed counsel to finish his closing statement.

After plaintiff's counsel concluded his summation, the court told the attorneys it was going to allow the jury to take a lunch break before charging them because, otherwise, the jury would not be able to have lunch until after 1:00 p.m. Neither party objected to the court's decision.

After the jury left the courtroom, the court and the parties had another discussion regarding the curative instruction. Defendant's counsel requested "either a mistrial or [for the court to] say outright [that] counsel made a reference" to reports that were not in evidence. Plaintiff's counsel stated it was his recollection, at the time he made the statements, that Dr. Berman had indeed

20

testified about the findings in his reports. However, upon review of Dr. Berman's testimony, plaintiff's counsel conceded that he was mistaken. The court then stated it was "inclined to go along with" defendant's counsel and give the jury a curative instruction but that it would think about it during the lunch break. The attorneys then proposed language for the instruction and both attorneys ultimately agreed upon the language the court would use, with defendant's counsel stating she could "live" with the instruction.

When the jury returned, the court gave them the following curative instruction:

> One thing beforehand. I'm . . . just going to give you a . . . small limiting instruction just for your information. Plaintiff's counsel commented on Dr. Berman's not finding herniations in this first report as to the plaintiff. That was never testified to by Dr. Berman during the trial, and any comments by plaintiff's counsel during his closing in this regard is to be disregarded by you in your deliberations, okay?

The court also gave the jury the standard instruction that while they could consider the attorneys' opening and closing statements, "nothing that the attorneys sa[id] is evidence and their comments are not binding upon" them. The court also advised the jurors that it was their "recollection and evaluation of the evidence that control[led]."

21

B.

Generally, attorneys are afforded broad latitude in summations. Bender v. Adelson, 187 N.J. 411, 431 (2006). Counsel may draw conclusions for the jury, even if they are absurd, but they may not "misstate the evidence nor distort the factual picture." Ibid. (quoting Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999)). Comments "must be confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Colucci, 326 N.J. Super. at 177). In other words, an attorney should not

> allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.
>
> [Morales-Hurtado v. Reinoso, 457 N.J. Super. 170, 189 (App. Div. 2018) (quoting RPC 3.4(e)).]

Disparaging remarks aimed at discrediting an opposing party or witness are likewise improper. See Rodd, 373 N.J. Super. at 171.

"When the jury has heard a statement from counsel or a witness that is irrelevant, inadmissible, or otherwise improper and also has the capacity for prejudice, the court's curative instruction must be prompt and sufficient to

22

overcome the potential prejudice." Pressler & Verniero, Current N.J. Court Rules, cmt. 9.2 on R. 1:8-7 (2024). "[A] clear and firm jury charge may cure any prejudice created by counsel's improper remarks during opening or closing argument." City of Linden, Cnty. of Union v. Benedict Motel Corp., 370 N.J. Super. 372, 398 (App. Div. 2004). This is especially the case where the sole issue before the jury is credibility, and improper comments may impact the jury's assessment of a critical issue. See Dimakopoulos v. Monmouth Med. Ctr., 312 N.J. Super. 20, 30 (App. Div. 1998). Courts presume jurors follow curative instructions. McRae v. St. Michael's Med. Ctr., 349 N.J. Super. 583, 599 (App. Div. 2002).

On appeal, the court "defer[s] to the discretion of the trial judge, who has the 'feel of the case.'" NuWave Inv. Corp. v. Hyman Beck & Co., Inc., 432 N.J. Super. 539, 567 (App. Div. 2013) (quoting Khan v. Singh, 397 N.J. Super. 184, 202 (App. Div. 2007)). The appellate court reviews the denial of a motion for a mistrial for abuse of discretion and it is within the trial court's competence to determine whether a prejudicial remark requires a curative instruction or was so extraordinary as to require a mistrial. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019).

For example, in State v. Winter, 96 N.J. 640, 648-49 (1984), the Court held that the trial court's curative instruction was sufficient to eliminate the prejudice caused by the jury hearing inadmissible hearsay statements. At trial, a witness for the prosecution mentioned inadmissible hearsay statements such as the fact that the victim had stated "they're out to murder me." Id. at 643-44. The jury was then excused and the defendant moved for a mistrial. Id. at 644. The trial court denied the motion but after the jury returned from the break, it gave a curative instruction, advising that the jury was "to disregard the last response of th[e] witness. You are not to consider that response, in any way, for any purpose." Ibid. Upon review, the Court found that while the comment was improper, the trial court had issued a "sharp and complete curative instruction" and there was nothing in the record to suggest the jury did not comply with the directive. Id. at 649.

In Szczecina v. PV Holding Corp., 414 N.J. Super. 173, 180-84 (App. Div. 2010), this court reversed and remanded for a new trial where the plaintiff's counsel urged the jury to "send a message" and referred to the defendant's experts as "spin doctors" and "hired guns." The court held that the plaintiff's counsel's misconduct was pervasive, and it was "patently inappropriate" to make

derisive statements and other invectives regarding the defendant's witnesses. Id. at 185.

On the other hand, our courts have also stated that brief and "[f]leeting comments, even if improper, may not warrant a new trial, particularly when the verdict is fair." Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009). In that same vein, where courts have given prompt curative instructions, our courts have found it to be "sufficient to ameliorate the effect of isolated lapses on the part of an attorney in closing arguments." Geler v. Akawie, 358 N.J. Super. 437, 470 (App. Div. 2003).

## C.

Applying these legal principles and precedents to the present situation, we affirm the trial court's decision to issue a curative instruction rather than grant a mistrial. Importantly, while defendant's counsel did request a mistrial, she stated the court could grant a mistrial or issue a curative instruction telling the jury not to consider the comments made by plaintiff's counsel. The court chose the latter.

We add that defendant did not specifically object to plaintiff's counsel's comment that Dr. Berman was playing "fast and loose with the evidence." See Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 523 (2011) (noting

25

that a failure to timely object to a comment made by opposing counsel in summation "indicates that defense counsel did not believe the remarks were prejudicial at the time they were made" (quoting Jackowitz, 408 N.J. Super. at 505)). At the oral argument on defendant's motion for a new trial, counsel acknowledged the lack of objection, explaining that she did not hear the comment until she heard the audio playback.

We agree with defendant that the comment was improper because it disparaged defendant's expert witness. See Rodd, 373 N.J. Super. at 171. The comment also encroached on the jury's role in making credibility assessments. See Dimakopoulos, 312 N.J. Super. at 30.

But while improper, it was a fleeting comment that, by itself, is unlikely to have caused an unjust result. See Jackowitz, 408 N.J. Super. at 505 (stating that "[f]leeting comments, even if improper, may not warrant a new trial"); cf. Geler, 358 N.J. Super. at 465-72 (remanding for a new trial where the plaintiff's counsel made repeated derisive and derogatory remarks against the defendant and their witnesses). Here, the comment was so fleeting that even defendant's counsel failed to note it. Moreover, in the context of plaintiff's entire summation, this was not part of a series of derisive comments against plaintiff or Dr. Berman.

26

Defendant takes issue with the curative instruction ultimately issued by the court, arguing it was not forceful or timely. Importantly, the court asked the attorneys for input on the language to use in the curative instruction, and both ultimately agreed to the instruction.

We are satisfied, moreover, that the court's instruction was clear and sufficiently forceful—it told the jury to disregard plaintiff's counsel's statements. Because "[t]he jury is deemed capable of following a curative instruction to ignore prejudicial matter[,]" Williams v. James, 113 N.J. 619, 632 (1989), there is nothing in the record to suggest the jury did not adhere to the court's instruction.

As to the timeliness argument, while the court did wait to issue the instruction to the jury until after the lunch break, neither party objected to the court letting the jury take a lunch break at that point. Moreover, during oral argument on defendant's motion for a new trial, the court noted that it used the break to play back the comments made by plaintiff's counsel during summation. The transcript reflects that the lunch break lasted from 12:26 p.m. to 1:42 p.m., or one hour and sixteen minutes. In these circumstances, we reject defendant's contention that the trial court unduly delayed giving a curative instruction. In sum, we are satisfied that the curative instruction was clear, prompt, and cured

27

any prejudice defendant suffered from comments made by plaintiff's counsel regarding the defense expert's prior reports.

IV.

Defendant next argues the trial court erred in denying his motion for a new trial based on the cumulative effect of the aforementioned errors. An appellate court reviews a trial court's denial of a motion for a new trial under Rule 4:49-1 for whether there was a miscarriage of justice under the law. Bender, 187 N.J. at 435; R. 4:49-1(a). A miscarriage of justice "can arise . . . from manifest lack of inherently credible evidence to support the finding, obvious overlooking or under-valuation of crucial evidence, [or] a clearly unjust result." Risko, 206 N.J. at 521 (alterations in original) (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996)). The reviewing court should take special care not to substitute its judgment for that of the jury. Ibid. "A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Ibid. (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)).

Further, "[a]n appellate court may reverse a trial court's judgment if the cumulative effect of a series of errors is so great as to deprive a defendant of a fair trial." State v. Burney, 255 N.J. 1, 29 (2023). If small errors throughout a trial had the likelihood of producing an unjust result, the appellate court can grant a new trial. Pellicer ex rel. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 54 (2009).

Here, the trial court denied defendant's motion for a new trial after carefully stating the reasons for its decision. Regarding the video, the court found Dr. Elkholy used it "to compliment and illustrate his trial testimony concerning the same procedure he completed on the plaintiff." The court noted the video had no audio, it was short in duration, was not admitted into evidence, and was not given to the jury for deliberations. The court therefore concluded the video was properly used by Dr. Elkholy.

As for comments made by plaintiff's counsel during closing argument, the court noted that after defendant's objection, it reviewed counsel's comments and decided to sustain the objection and issue a curative instruction. The court stated that both attorneys agreed on the proposed instruction and that it "properly addressed plaintiff's counsel's comment during summation." The court concluded that "[t]here [wa]s no reason to believe that the jury either disobeyed

the curative instruction or disregarded the curative instruction in their deliberations."

We are satisfied that none of the errors alleged by defendant, either individually or cumulatively, resulted in a miscarriage of justice and thus have no basis to second guess the trial court's ruling or the jury verdict.

To the extent we have not specifically addressed them, any remaining arguments made by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3024-23